[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE
CT Page 6189
 I
The facts pertinent to this motion, as alleged in the revised complaint, are as follows: The plaintiff was employed as a welder f or the defendant in Middletown. On or about April 8, 1998, the plaintiff asked Thomas Mitchell, a coworker, to lower his radio. Mitchell replied that he was not doing anything the plaintiff asked him to do and stated "why don't you come over and try to turn it down. I would like to see you try." Revised Complaint, ¶ 4. The plaintiff indicated that she would not make him turn it down but would find someone who would. The plaintiff approached her supervisor, Joseph Domico, who asked Mitchell to turn down his radio. Upon Domico's exit, Mitchell berated the plaintiff by speaking loudly to a coworker and stating "I'm going to get her and every last one of them." Feeling threatened, the plaintiff went to Domico who spoke to Mitchell.
The next day the plaintiff spoke to her Unit Manager, Arthur Souci. The plaintiff related the facts of the incident that occurred on the previous day. Souci talked with Mitchell and assured the plaintiff that Mitchell would not harm her. The plaintiff expressed her dissatisfaction and feeling of vulnerability to Souci. Souci indicated that he was leaving a supervisor there all night and that he was not responsible for what occurred once the workers left. The plaintiff asked to leave early and was forced to use a vacation day.
Within days, the plaintiff reported the incident to the Glastonbury police, requested that the police watch her house, and sought a transfer to the defendant's East Hartford location. The plaintiff sought medical treatment for stress and began taking medication. Due to stress, she did not return to work until April 22, 1998. Upon her return to work, the plaintiff found that her work station had been moved directly across from Mitchell. Supervisor Steven White indicated that he did not know why she had been moved but informed her that she could work in another area. The plaintiff also called the personnel department immediately upon this discovery and left work when the personnel office failed to return her call by 7:00 PM.[1]
On April 23, 1998, Gail Wozenski, from the defendant's personnel department, contacted the plaintiff at home and scheduled a meeting with the plaintiff for April 27, 1998. At her CT Page 6190 meeting with Wozenski, the plaintiff explained the incident, her medical treatment and her frightened condition.
The plaintiff worked on the defendant's second shift during April 1998 and that shift ended at midnight. The plaintiff learned that Souci and Domico failed to report Mitchell's conduct and the defendant failed to investigate the situation. The plaintiff again requested a transfer. Subsequently, the plaintiff's physician found the plaintiff disabled from working.
The defendant conducted an investigation concerning the plaintiff's complaint. Despite the testimony of witnesses confirming the plaintiff's version of the incident, the defendant found the plaintiff's work environment safe.
The plaintiff filed her present action on July 29, 1998 and her revised complaint on November 5, 1998, alleging negligent infliction of emotional distress, intentional infliction of emotional distress, violation of General Statutes § 31-49 and negligent supervision. The defendant moved to strike all four counts of the revised complaint on November 18, 1998 and filed an accompanying memorandum of law. The plaintiff filed a memorandum in opposition to the motion to strike on December 21, 1998. The court heard oral argument on January 11, 1999.
 II
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998) The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Brothers, Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990). In addition, the court "must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Bhinder v. Sun Co., 246 Conn. 223, 226, 717 A.2d 202
(1998). Therefore, the court must view the facts "in a broad CT Page 6191 fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them." (Internal quotation marks omitted.) Zeller v. Mark,14 Conn. App. 651, 654, 542 A.2d 752 (1988) "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to "strike." Bouchard v.People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991).
 III A
The defendant claims that the court should grant its motion to strike each count of the complaint because the plaintiff admits that Mitchell's threat and not the defendant's actions caused her emotional distress. In her revised complaint, the plaintiff indicates that she told Gail Wozenski from the defendant's human resources department that "she was unable to work due to the stressful situation created by Mitchell's threat."[2] Despite the defendant's contention that only Mitchell's threat caused the plaintiff's emotional distress, the defendant incorrectly characterizes the plaintiff's statement. The plaintiff indicates that Mitchell's threat created a "stressful situation." This allegation, however, does not admit that Mitchell was the exclusive cause of the plaintiff's emotional distress. Aside from Mitchell's threat, the plaintiff has alleged that the movement of her work station and other conduct by the defendant caused her extreme emotional distress. Accordingly, the court denies the defendant's motion to strike each count of the complaint on the basis of the plaintiff's alleged admission because the plaintiff has adequately alleged other causes of her emotional distress.
 B
In count one, the plaintiff alleges that the defendant negligently inflicted emotional distress on her by failing to transfer her, failing to conduct a prompt and thorough investigation of the relevant incident, and by placing the plaintiff in close proximity to Mitchell. The defendant argues that the plaintiff fails "to allege a termination and therefore fails to state a cause of action for negligent infliction of emotional distress. The plaintiff counters that the Connecticut Supreme Court has not directly addressed this issue since the CT Page 6192 legislature amended the definition of "personal injury" in the Workers' Compensation Act which now excludes mental or emotional impairment. See Public Acts 1993, No. 93-228, § 1; General Statutes § 31-275 (16).[3] The plaintiff complains that individuals would be left without a remedy for emotional distress in the workplace caused by negligent conduct if the court agreed with the defendant.
In order to state a claim for negligent infliction of emotional distress, "the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . [N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." (Citation omitted; internal quotation marks omitted.)Parsons v. United Technologies Corp. , 243 Conn. 66, 88-89,700 A.2d 655 (1997); see also Pavliscak v. Bridgeport Hospital,48 Conn. App. 580, 597, 711 A.2d 747, cert. denied, 245 Conn. 911,718 A.2d 17 (1998). The court denies the defendant's motion to strike count one because the present case involves a different factual scenario than Parsons, and, accordingly, does not preclude a claim for "negligent infliction of emotional distress absent an allegation of termination.
While "[i]t is axiomatic that a trial court is bound by Supreme Court precedent"; Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 195, 676 A.2d 831 (1996); "[a]n opinion is to be read in connection with the facts on which it is based"; ZoningCommission v. Fairfield Resources Management, Inc.,41 Conn. App. 89, 109, 674 A.2d 1335 (1996); and "the precedential value of a decision should be limited to the four corners of the decision's factual setting." State v. Ouellette,190 Conn. 84, 91, 459 A.2d 1005 (1983), citing Armour Co. v. Wantock, 323 U.S. 126,132-33, 65 S.Ct. 165, 89 L.Ed. 118 (1944), reh. denied,323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945). Both the Supreme Court and the Appellate Court have stated the rule that negligent infliction of emotional distress in the workplace only applies in the termination context. See Parsons v. United TechnologiesCorp. , supra, 243 Conn. 88-89; Pavliscak v. Bridgeport Hospital, supra, 48 Conn. App. 597. This rule has, however, been stated only in cases involving a termination. The present case alleges no termination and is accordingly factually distinguishable from CT Page 6193Parsons and Pavliscak.
The Connecticut Supreme Court and Appellate Court have not addressed a claim of negligent infliction of emotional distress when no termination is alleged. The United States District Court for the District of Connecticut, however, concluded, based onParsons, that Connecticut does not recognize a cause of action for negligent infliction of emotional distress in the employment context absent an allegation of termination. See Cowen v. FederalExpress Corp. , 25 F. Sup.2d 33, 40 (D. Conn. 1998) (noting that Connecticut law does not recognize a claim for negligent infliction of emotional distress "to redress unreasonable conduct in the employment relationship as a whole, but instead . . . that such a claim must be based on unreasonable conduct in the termination process"); White v. Martin, 23 F. Sup.2d 203, 208
(D. Conn. 1998) (holding that the plaintiff could not allege a cause of action for negligent infliction of emotional distress against the defendant, his employer, under Connecticut law because the plaintiff was still employed by the defendant); see also Malik v. Carrier Corp. , 986 F. Sup. 86, 92 (D. Conn. 1997) (discussing the limitation of negligent infliction of emotional distress to unreasonable conduct in the employment context despite changes to the Connecticut Workers' Compensation Act). Nevertheless, there appears to be no such limitation in Connecticut.
Prior to July 1, 1993, an employee could not bring a cause of action for negligent infliction of emotional distress against an employer except for distress caused during the termination process since "on-the-job sufferings" were compensable under the Connecticut Workers' Compensation Act. Malik v. Carrier Corp. , supra, 986 F. Sup. 92.[4] The Connecticut Appellate Court concluded that the exclusivity provisions of the Workers' Compensation Act do not apply to a termination since a termination is not incidental to one's employment. Fulco v.Norwich Roman Catholic Diocesan Corp. , 27 Conn. App. 800, 809,609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404,627 A.2d 931 (1993). The court reasoned that termination is not something an employee regularly engages in within the period of employment. Id.
With the passage of P.A. 93-228, Connecticut excluded mental and emotional impairment from the definition of "personal injury" in the Workers' Compensation Act. See General Statutes §31-275 (16); P.A. 93-228, § 1. This change led some courts to CT Page 6194 conclude that "since the workers' compensation bar on common-law claims applies only to personal injuries, and since after July 1, 1993, emotional distress that does not arise from a physical injury or occupational disease is not a `physical injury,' it naturally follows that the Workers' Compensation Act does not bar negligent infliction of emotional distress claims incurred after July 1, 1993." Malik v. Carrier Corp. , supra, 92 n. 6; see alsoLuth v. Wal-Mart Stores, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 358488 (August 18, 1995,Hartmere J.). The legislative history of P.A. 93-228 also appears to indicate the legislature's intent to permit a have been compensable under the statute. See Bennett v. Beiersdorf,889 F. Sup. 46, 50 (D. Conn. 1995) direct action for negligent infliction of emotional distress after July 1, 1993.[5]
Subsequent to the enactment of P.A. 93-228, the Connecticut Supreme Court decided Parsons. The court noted that "negligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in the termination process.'" Parsons v. UnitedTechnologies Corp. , supra, 243 Conn. 88, quoting Morris v.Hartford Courant Co., 200 Conn. 676, 682, 513 A.2d 66 (1986). While this statement appears at first blush to offer a definitive answer to the issue of whether the court should strike count one, the court must consider the context in which the Supreme Court made this statement. Unlike the case presently before this court,Parsons involved a claimed wrongful termination. See Parsons v.United Technologies Corp. , supra, 70. Accordingly, the Supreme Court addressed the issue of whether the trial court properly struck the plaintiff's negligent infliction of emotional distress claim based on the circumstances off his termination. The court did not address or decide the issue of whether a plaintiff can state a cause of action for negligent infliction of emotional distress absent an allegation of termination.
In addition, Parsons quoted Morris, a case decided prior to the relevant changes in the Workers' Compensation Act. Not only was Morris also a wrongful termination case, but the statement inMorris, quoted by Parsons, related to the court's discussion of why the trial court improperly struck the negligent infliction of emotional distress claim based solely on the striking of the wrongful termination claim — the statement was essentially dicta and in no way supports the conclusion that there exists no cause of action in Connecticut for negligent infliction of emotional distress in the employment context absent a claim or CT Page 6195 allegation of wrongful termination.
Failing to recognize a cause of action for negligent infliction of emotional distress in the non-termination employment context would lead to the anomalous result of precluding an employee from receiving compensation for emotional distress suffered at the hands of employers; compensation that was certainly available under the Workers' Compensation Act prior to P.A. 93-228. The defendant cites to no authority providing policy reasons for departing from the recognition of a cause of action, as established under Montinieri v. Southern New EnglandTelephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978), for negligent infliction of emotional distress.
Based upon the effects of P.A. 93-228 and the intent of the legislature in passing that act, the court can reasonably conclude that the Supreme Court would permit a negligent infliction of emotional distress claim against an employer when no termination is alleged. The circumstances of the present case make Parsons, a wrongful termination case, distinguishable. Accordingly, in order for the plaintiff to properly state a claim for negligent infliction of emotional distress, the plaintiff must allege that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." Montinieri v. Southern New EnglandTelephone Co., supra, 175 Conn. 345.
The defendant claims that the plaintiff has failed to allege that any emotional distress caused by the defendant might result in injury or bodily harm. The plaintiff has alleged that the defendant placed her in close proximity "to the individual who threatened her." While the plaintiff does not explicitly state that the emotional distress caused by the defendant might have resulted in injury or bodily harm, the court can infer that this harm might have resulted from the allegations in the complaint. See Bouchard v. People's Bank, supra, 219 Conn. 471. The plaintiff has alleged that the defendant's conduct has resulted in pain and suffering and the necessity for medication. Accordingly, the plaintiff's allegations suffice to allege a cause of action for negligent infliction of emotional distress and therefore the court denies the defendant's motion to strike count one.
 C CT Page 6196
The plaintiff alleges in count two that the defendant intentionally inflicted emotional distress upon her by failing to report Mitchell's threat to personnel, by failing to conduct a thorough investigation of the relevant incident, by moving her work station, and by refusing to transfer her. The defendant argues that the plaintiff has failed to allege facts that constitute extreme and outrageous conduct. The plaintiff counters that she has alleged sufficient facts to withstand a motion to strike since the defendant's conduct was "extreme and outrageous."
"To prevail on a claim of intentional infliction of emotional distress, it must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Honan v. Dimyan,52 Conn. App. 123, 133-34, ___ A.2d ___ (1999). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.)DeLaurentis v. New Haven, 220 Conn. 225, 267, 597 A.2d 807
(1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy [any] of these elements is a question, in the first instance, for the court. Only where reasonable minds could differ does it become an issue for the jury." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17,18, 597 A.2d 846 (1991); see also Nguyen v. Newberry Industries,Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 571319 (October 31, 1997, Hale, J.)
"Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. See 1 Restatement (Second), Torts § 46. Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice. Id., comment e. Such conduct may, however, give rise to a cause of action where the defendant is aware of the peculiar sensitivities of the plaintiff. `The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. CT Page 6197 The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.' Id., comment f; see also Prosser, Torts (4th Ed.) § 12, p. 58." Brown v. Ellis,40 Conn. Sup. 165, 167, 484 A.2d 944 (1984)
In Brown v. Ellis, the plaintiff, a photographer, brought an action against his employer claiming that his employer caused him severe emotional distress and anxiety by giving him an assignment that involved photography at high elevations despite the defendant's knowledge of his fear of heights. Id., 166. When the plaintiff declined the assignment, his supervisor threatened to have him forcibly removed if he did not perform the work. Id. Based upon the plaintiff's allegations and the defendant's alleged knowledge of the plaintiff's fear, the court concluded that the defendant's conduct could be considered extreme and outrageous. Id., 167-68.
In the present case, the plaintiff indicates that she expressed her concern to her supervisors regarding Mitchell, requested a transfer, sought medical treatment, and missed work due to stress. Despite the plaintiff's alleged condition, the plaintiff claims that the defendant moved her work station to a position directly across from Mitchell upon her return. The plaintiff alleges that this conduct was willful. Although the supervisor gave the plaintiff the opportunity to move her work station away from Mitchell, sufficient damage may have already occurred when the plaintiff was exposed to a potentially volatile situation. For the purposes of the motion to strike, the court is obligated to construe the "complaint in a manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, supra, 219 Conn. 471. Based upon the plaintiff's alleged condition and the defendant's alleged knowledge of that condition, in the opinion of the court the defendant's alleged conduct was sufficiently extreme and outrageous. Accordingly, the motion to strike on this basis is denied.
 D
The defendant also argues that the court must strike count three of the complaint since the plaintiff fails to state a claim under General Statutes § 31-49. The defendant insists that there is no private cause of action under that statute. The plaintiff counters that the Connecticut Supreme Court articulated that Connecticut has a policy that favors providing a reasonably CT Page 6198 safe work environment and cited General Statutes § 31-49
within its opinion. The plaintiff also cites a Superior Court case that permitted a private cause of action under General Statutes § 31-49.
General Statutes § 31-49 provides, in relevant part, that "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place to work . . . and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. . . ." General Statutes § 31-50 provides that "[t]he [labor] commissioner shall enforce the provisions of part I of this chapter and sections 31-23 to 31-49, inclusive, by giving proper orders or notices to the persons or corporations owning, operating or managing the factories or buildings inspected by him and shall make complaint to the state's attorneys of any violation of said provisions." There is a split in the Superior Court concerning whether the plaintiff may bring a private cause of action based upon General Statutes §31-49.
The plaintiff contends that General Statutes § 31-49
provides a private right of action. In Parsons v. UnitedTechnologies Corp. , supra, 243 Conn. 68-69, United Technologies assigned an instructor of aircraft maintenance to instruct several members of a Bahrain helicopter crew regarding the proper repair and maintenance of a nonmilitary helicopter it had designed for the Crown Prince of Bahrain. This assignment required the instructor to eat, sleep and reside at a Bahrain military base. Id., 69. When the instructor refused, United Technologies terminated him. Id.
The instructor brought an action against United Technologies based upon wrongful termination. Id., 70. The instructor, relying upon several statutory provisions including General Statutes § 31-49, claimed that his discharge for refusal to travel to Bahrain violated Connecticut public policy requiring an employer to provide its employees with a reasonably safe place to work. Id. At the time of the instructor's refusal to travel to Bahrain, Iraq occupied Kuwait after a military invasion. Id. The United States State Department issued a travel advisory during the relevant period advising United States citizens to defer all nonessential travel to Bahrain. Id. CT Page 6199
The Connecticut Supreme Court stated: "As a result of our careful review of the language, history, and public policy underlying the statutory provisions cited by the plaintiff in support of his claim, we conclude that this body of law expresses a clear and defined public policy requiring an employer who conducts business in Connecticut to provide a reasonably safe work place to its employees. We note, for example, that although § 31-49 was originally codified in 1902, the legislature has not repealed it despite the subsequent enactment of other statutes, such as the Workers' Compensation Act, which regulate safety in the workplace. See Perille v.Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 494 A.2d 555
(1985). The legislature also enacted § 31-370, which is part of the Connecticut occupational Safety and Health Act, to regulate safety in the workplace. Both §§ 31-49 and 31-370
reflect a broad legislative concern for the physical welfare and safety of Connecticut employees. Consequently, we are persuaded that the mandate of public policy that these statutes embody gives a Connecticut employee a cause of action for wrongfuldischarge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties." (Emphasis added.) Parsons v.United Technologies Corp. , supra, 243 Conn. 79-80.
One Superior Court decision closely resembles the facts of the present case. In Brunelle v. Reuters Analytics Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 566808 (January 29, 1998, Rittenband, J.) (21 Conn. L. Rptr. 365, 366), the plaintiff brought a claim under General Statutes § 31-49 alleging that his employer failed to provide "fit and competent colaborers." Id. The plaintiff alleged that sarcasm and derogatory comments by his coworker caused him emotional and physical distress in violation of the statute. The court concluded that allegations that an employee is subject to emotional distress as a result of the conditions of the work place suffice to allege a cause of action under General Statutes § 31-49. Id.
In contrast, another Superior Court decision suggests that General Statutes § 31-49 does not provide a private cause of action. In McMahon v. Hoffman Court Condominium Assn., Superior Court, judicial district of New Haven at New Haven, Docket No. 350866 (June 16, 1994, Gray, J.), the court stated within dicta CT Page 6200 that General Statutes § 31-49 is "a statutory provision that is within the sole jurisdiction of the Labor Commissioner and any violations thereunder cannot give rise to a private cause of action."[6] In addition, the limited Supreme Court cases that have cited this provision do not explicitly discuss a private cause of action under the statute. Prior to the enactment of the Workers' Compensation Act, the Supreme Court held that a defendant was liable for negligence because the defendant's act was "a default in the performance of a duty imposed upon [an] employer," citing a predecessor to General Statutes § 31-49.Swain v. O'Loughlin, 80 Conn. 200, 205, 67 A. 480 (1907); see also Allen v. Bishop Co., 85 Conn. 607, 610, 84 A. 87 (1912). After the passage of the Workers' Compensation Act, the Connecticut Supreme Court cited the provisions of General Statutes § 31-49 (formerly § 7367) when it discussed the duties of an employer and the risks accepted by an employee within a jury charge in a negligence case. See Balla v. Lonergan,143 Conn. 197, 120 A.2d 705 (1956).[7]
The Supreme Court failed to cite General Statutes § 31-49
or its predecessors for nearly thirty years. Finally, in 1985, the Supreme Court stated in Perille v.Raybestos-Manhattan-Europe, Inc., supra, 196 Conn. 543, that "[s]ection 31-49 still enjoys vitality where appropriate. See, e.g., Balla v. Lonergan, 143 Conn. 197, 120 A.2d 705 (1956); see also General Statutes § 31-50. The Workers' Compensation Act and § 31-49 thus coexist in our statutory law, each to apply where appropriate." However, the court concluded that the plaintiff's claim was within the scope of the Workers' Compensation Act and therefore refused to apply General Statutes § 31-49. See Perille v. Raybestos-Manhattan-Europe, Inc., supra, 543. Based upon this limited usage of General Statutes § 31-49, the court is of the opinion that the plaintiff may not state a statutory cause of action based upon General Statutes § 31-49. General Statutes § 31-49 is not the basis of a separate cause of action against an employer by a private party. Rather, § 31-49 appears to provide a public policy basis for a wrongful termination cause of action against an employer or the basis of establishing a duty of an employer in a negligence case. Accordingly, the defendant's motion to strike count three is granted.
 E
In count four of the complaint, the plaintiff alleges that CT Page 6201 the defendant failed to properly supervise Mitchell by failing to adequately investigate and discipline him for threatening her. The defendant seeks to strike count four of the complaint, claiming that the plaintiff failed to allege any injury by the defendant's failure to investigate or discipline Mitchell. The defendant also claims that the plaintiff failed to plead that her distress might result in serious bodily harm. The plaintiff did not address the defendant's motion to strike count four in her memorandum in opposition.
To state a cause of action for negligent supervision, a plaintiff must ordinarily plead and prove that she was injured by the defendant's own negligence in failing to supervise an individual that the defendant has a duty to supervise. SeeSurowiec v. Security Forces, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547875 (May 23, 1995, Sheldon, J.) (involving negligent hiring). Under Connecticut law, a defendant does not owe a duty of care to a plaintiff to protect her from another employee's actions unless the defendant knows or has reason to know that the employee has a propensity to engage in tortious conduct. See See v. BridgeportRoman Catholic Diocesan Corp. , Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 300948 (July 31, 1997,Thim, J.) (20 Conn. L. Rptr. 271). "In such instances, the defendant's liability is not vicarious, but direct and personal."Surowiec v. Security Forces, Inc., supra, Superior Court, Docket No. 547875. "The defendant's liability depends on proof that it had a duty to the plaintiff to engage fit and competent persons to do certain work, that it breached that duty by engaging unfit, incompetent persons to perform the work, and that the plaintiff was later injured by the contractor's unfit or incompetent performance of the work." Id. The court grants the defendant's motion to strike count four since the plaintiff fails to allege that Mitchell or another employee injured her after the defendant failed to adequately investigate and punish Mitchell. Any alleged injury that Mitchell inflicted upon the plaintiff occurred prior to the defendant's investigation.
 IV
The court denies the motion to strike count one. The language in Parsons does not preclude a claim for negligent infliction of emotional distress in the non-termination employment context because Parsons was a wrongful termination case; accordingly,Parsons was decided on different facts than the present case. In CT Page 6202 addition, the plaintiff has sufficiently stated a claim for negligent infliction of emotional distress is provided inMontinieri. The court denies the motion to "strike count two because the plaintiff has adequately stated a claim for intentional infliction of emotional distress since the defendant's conduct may be considered extreme and outrageous. The court grants the motion to strike count three because General Statutes § 31-49 does not provide a statutory cause of action. Finally, the court grants the motion to strike count four because the plaintiff failed to allege that the defendant's inadequate investigation led to subsequent injury caused by another employee.
Hale, JTR