[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
At issue in the present case is the Defendant's motion to strike five counts of the Plaintiff's six count revised complaint and two prayers for relief. The Plaintiff claims defamation by slander per se, defamation by libel per quod, wrongful discharge, intentional infliction of emotional distress, unintentional infliction of emotional distress and false light invasion of privacy. The case arises from the alleged misconduct of the Defendant that resulted in the Plaintiff's termination from employment and arrest.
The following facts are taken from the Plaintiff's revised complaint, filed May 15, 2000. The Plaintiff is Mario J. Olivas, a former employee of the Defendant, DeVivo Industries, Inc. (Count one, ¶¶ 1-2.) The Plaintiff's brother, Wilfredo Flores, also worked for the Defendant. On or about May 22, 1998, Flores' paycheck was discovered to be missing. (Count one, ¶ 12.) The Plaintiff alleges that, when his brother's paycheck was discovered missing, the Defendant, and several of its CT Page 3132-de employees, accused the Plaintiff of stealing it. (Count one, ¶¶ 13-17.) Allegedly, one of the Defendant's employees, Totino Rosatelli, photocopied some confidential photographic identifications of the Defendant's employees, including the Plaintiff's photographic identification, and brought them to the liquor store where the check was cashed. (Count one, ¶ 13.) Rosatelli showed the photocopied photographic identifications to the store owners, and, allegedly, also made some statements indicating that the Plaintiff was the culprit. (Count one, ¶ 14.)
The Defendant's employees accused the Plaintiff of stealing the check and of forgery, and allegedly shared this allegation with the Plaintiff's brother, other employees, the owners of the liquor store, and the Plaintiff's landlady. (Count one, ¶¶ 13-19.) The owners of the liquor store called the police and signed a complaint for the arrest of the Plaintiff. (Count one, ¶ 19.) The charges were later dismissed. (Count one, ¶ 20.)
In regard to the terms of the Plaintiff's employment with the Defendant, the Plaintiff alleges that: the Defendant informed him "that he would receive a pension, medical insurance, vacation, holiday pay, pay increases, bonuses and promotions"; "he did receive medical insurance, holiday pay, pay increases, and a promotion"; "any employee would be suspended because of a three or more days absence from work . . . without authorization"; and he relied on these representations. (Count one, ¶¶ 7-11.)
The Defendant filed the present motion to strike on June 23, 2000, premised on the following grounds:
 1) Count two fails to state a claim in "Libel Per Quod" because no special damages are alleged.
 2) Count Three fails to state a claim in Wrongful Discharge" because no public policy is alleged to have been violated by Plaintiff's termination.
 3) Count Four fails to state a claim in "Intentional Infliction of Emotional Distress" because no extreme conduct has been alleged.
 4) Count Five fails to state a claim in "Unintentional Infliction of Emotional Distress" because no unreasonable conduct during the termination process CT Page 3132-df has been alleged.
 5) Count Six fails to state a claim in "False Light Invasion of Privacy" because no dissemination to the general public is alleged.
 6) The Prayer for Relief (for all six counts) fails to state a claim for punitive damages because no such damages can be recovered against Defendant under a respondeat superior theory.
 7) The Prayer for Relief (for all six counts) fails to state a claim for attorney's fees because such recovery is not permitted absent statutory or contractual authority.
The court will address each ground seriatim.
The Plaintiff filed an objection to the motion to strike on October 12, 2000, and the Defendant filed a reply to the Plaintiff's objection on October 13, 2000.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270 (1998). This rule extends to prayers for relief, "only if the relief sought could not be legally awarded." Pamela B. v. Ment, 244 Conn. 296, 325 (1998). "A motion to strike admits all facts well pleaded." Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 68 (1997). The court "must read the allegations of the complaint generously to sustain its viability, if possible. . . ." ATC Partnership v. Windham, 251 Conn. 597, 603 (1999), cert. denied, ___ U.S. ___, 120 S.Ct. 2217, 147 L.Ed.2d 249 (2000). "[P]leadings must be construed broadly and realistically, rather than narrowly and technically." Doe v. Yale University, 252 Conn. 641, 667
(2000). A motion to strike will be granted, however, "if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215 (1992).
 COUNT TWO
The Defendant moves to strike count two, which is a claim for libel per quod. The elements of a libel per quod are described in Battista v.CT Page 3132-dgUnited Illuminating Co., 10 Conn. App. 486, 491-93, cert. denied,204 Conn. 802 (1987):
 While all libel was once actionable without proof of special damages, a distinction arose between "libel per se" and "libel per quod." R. Sack, Libel, Slander Related Problems, p. 96-97. A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. Id., 97. When a plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover. D. Wright J. Fitzgerald, Connecticut Law of Torts (2d Ed.) 146.
 Libel per se, on the other hand, is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. Id. The distinction between libel per se and libel per quod is important because "[a] plaintiff may recover general damages where the defamation in question constitutes libel per se. Yavis v. Sullivan, 137 Conn. 253, 76 A.2d 99 (1950). `When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.' Urban v. Hartford Gas Co., 139 Conn. 301, 308, 93 A.2d 292 (1952). The individual plaintiff is `entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him.' Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 571, 72 A.2d 820 (1950)." Monroe v. Crandall, 3 Conn. App. 214, 220-21, 486 A.2d 657
(1985). . . .
 ["]Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Citations omitted.) Proto v. Bridgeport Herald Corporation, supra, 565-66. . . . To fall within this category of libel per se, the defamatory statement must charge a crime which involves moral turpitude or to which an CT Page 3132-dh infamous penalty is attached. Id., 566. The modem view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment. See Corbett v. Register Publishing Co., 33 Conn. Sup. 4, 13, 356 A.2d 472 (1975); 2 Restatement (Second), Torts 571. The allegation that a person committed a crime need not be as specific as in an indictment, but it must bear some reasonable relation to the legislative definition of a crime. R. Sack, supra, pp. 76-77.
Because count two is entitled "defamation by libel per quod," and because both parties argue only that the allegations do in fact sound in libel per quod, this court will consider it as such a claim, and not as a claim for libel per se.
The Defendant claims that this count is deficient because the Plaintiff fails to plead special damages, as required to assert a claim for libel per quod. The Plaintiff contends that count two is sufficient for two reasons. First, the Plaintiff argues that he has alleged pecuniary damages arising from the legal fees he incurred in defending the criminal charges stemming from the allegations of the Defendant's employees. Alternatively, the Plaintiff argues that because he alleged that the Defendant has published an injurious falsehood, he need not allege special damages. (Plaintiff's memorandum in opposition, p. 4.)
The Plaintiff's claims of pecuniary damage are not sufficient. To maintain a claim sounding in libel per quod the Plaintiff must allege special damages. Battista v. United Illuminating Co., supra,10 Conn. App. 491. Special damages must be pecuniary in nature and must result from the conduct of a person other than the defamed. Urban v.Hartford Gas Co., 139 Conn. 301, 308 (1952). That the Plaintiff has been put to expense to refute the alleged libel is not enough. W. Prosser W. Keeton, Torts (5th Ed. 1984) § 112, p. 794. Therefore, the Plaintiff's allegations that he incurred legal expenses to clear his name do not amount to special damages for the purpose of establishing a claim for libel per quod.
As to the Plaintiff's second argument that "once the Plaintiff has established in a libel action that the defendant has published an injurious falsehood, he is entitled under Connecticut law to recover general damages without allegations without allegations of special damages," quoting D. Wright, J. Fitzgerald W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 146, p. 409, this rule applies to libel per se, not libel per quod, and thus is not applicable to this case. A claim CT Page 3132-di for libel per quod must include allegations of special damages, as set forth supra. Accordingly, the motion to strike count two is granted.
 COUNT THREE
The Defendant claims that count three, sounding in wrongful discharge, is insufficient because the complaint does not allege a violation of public policy and such an allegation is required in order for an at will employee to bring an action for wrongful discharge. (Defendant's memorandum in support, p. 11, citing Morris v. Hartford Courant Co.,200 Conn. 676, 679 (1986).) The Plaintiff does not dispute this argument, but argues instead that the Plaintiff was not an at will employee, and therefore, this reasoning is inapplicable. (Plaintiff memorandum in opposition, pp. 4-5.) The third count incorporates the following allegations from count one regarding the terms of the parties' employment agreement:
 7. Plaintiff was informed by Defendant, through its agents/employees, including John Piscelli, on the day of the interview, that he would receive a pension, medical insurance, vacation, holiday pay, pay increases, bonuses, and promotions based on his job performance. Some of these also were posted in the Defendant's workplace. Plaintiff had and implied contract with DeVivo Industries.
 8. Plaintiff did receive medical insurance, holiday pay, pay increases, and a promotion.
 9. Plaintiff was promoted and was informed he would continue to be promoted based on his performance.
 10. Plaintiff was informed, on his hiring date and thereafter, that any employee would be suspended because of a three or more days absence from work without informing the job, or without authorization.
 11. Plaintiff relied on Defendant's representations, through its agents/employees, regarding his employment.
The third count also contains the following additional allegation: "The Plaintiff's dismissal was against the employment contract." In its reply CT Page 3132-dj memorandum, the Defendant argues that this is a post hoc attempt to recast count three from a tort to a contract claim. (Defendant's reply, p. 3.)
It is well established that a wrongful discharge claim does not lie where the plaintiff is an at will employee, unless the employer violates an important public policy. Burnham v. Karl Gelb, P.C., 252 Conn. 153,158-59 (2000). The complaint contains no allegation of a violation of a public policy. Therefore, the issue before the court is whether the Plaintiff has sufficiently alleged that he was not an employee at will.
The Defendant contends that count three is fatally deficient because it fails to allege that the Plaintiff could not be fired without just cause. (Defendant's reply, p. 3.) The Defendant is correct. Pavliscak v.Bridgeport Hospital, 48 Conn. App. 580, 593, cert. denied, 245 Conn. 923
(1998). Even assuming, arguendo, that the Plaintiff's employment was the result of an implied contract, none of the Plaintiff's factual allegations address the issue of its term or termination, rather they deal with benefits. The court concludes that the Plaintiff failed to allege any facts to indicate that he was anything other than an "at will" employee and failed to allege that the Defendant violated a public policy in discharging him. Accordingly, the motion to strike count three is granted.
 COUNT FOUR
The Defendant moves to strike count four, which sounds in intentional infliction of emotional distress. The Defendant claims that count four is deficient because the Plaintiff fails to allege that the Defendant engaged in extreme or outrageous conduct. To state a claim of intentional infliction of emotional distress, a plaintiff must allege four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 210 (2000). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury.Reed v. Signode Corporation, 652 F. Sup. 129, 137 (D.Conn. 1986); 1 Restatement (Second), Torts § 46, comment (h) (on the issue of extreme and outrageous conduct) and comment (j) (on the issue of severe CT Page 3132-dk emotional distress)." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18-19
(1991). Because the defendant raises these issues by a motion to strike, the court is limited to the facts alleged in the complaint. Parsons v.United Technologies Corp., supra, 243 Conn. 68.
The Plaintiff's allegations go beyond the fact that he was fired and include the circumstances surrounding the Defendant's accusations of theft and forgery. Reading the complaint broadly, the court finds that these allegations, taken together, could amount to extreme and outrageous conduct. Accordingly, the motion to strike count four is denied.
 COUNT FIVE
The Defendant moves to strike count five which alleges negligent infliction of emotional distress. The Defendant contends that "[a]s a matter of law, no claim for negligent infliction of emotional distress can be maintained except to challenge the employer's conduct during the termination itself." (Defendant's memorandum in support, p. 16, citingParsons v. United Technologies, supra, 243 Conn. 88, and Morris v.Hartford Courant Co., 200 Conn. 676, 681-82 (1986).) The Defendant further contends that, aside from the termination itself, which did not arise to the level of extreme and outrageous, the conduct the Plaintiff complains of, namely the accusations of theft and fraud, took place before the Plaintiff was fired, and so do not fall within the termination process. (Defendant's memorandum in support, p. 16.) In Parsons, the Supreme Court stated: "negligent infliction of emotional distress arises only where it is `based upon unreasonable conduct of the defendant in the termination process.'" Parsons v. United Technologies, supra, 88, quotingMorris v. Hartford Courant Co., supra, 682.
There is a split among the judges of the Superior Court as to whetherParsons and Morris foreclose any claim for negligent infliction of emotional distress outside of the termination context. One line of cases holds that no such claim may be brought outside of the termination process. Ferraro v. Stop Shop Supermarket Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 388031 (May 24, 2000,Silbert, J.) ("[t]he named plaintiff was not terminated and is still employed by Stop Shop. He therefore cannot state a claim for negligent infliction of emotional distress."); Perez v. Thomas G. Faria Corp., Superior Court, judicial district of New London at Norwich, Docket No. 116017 (January 29, 1999, Parker, J.) (conduct upon which valid claim for negligent infliction of emotional distress "must occur during, or immediately before or after the actual delivery of the notification of the termination of the employee."); Anastasio v. Knights of Columbus, CT Page 3132-dl Superior Court, judicial district of New Haven at New Haven, Docket No. 396806 (May 21, 1998, Silbert, J.) (denies motion to strike intentional infliction of emotional distress count, but strikes negligent infliction count, citing Parsons). Another line of cases, beginning with Karanda v.Pratt Whitney Aircraft, Inc., Superior Court, judicial district of Hartford, Docket No. 582025 (May 10, 1999, Hale, J.T.R.) (24 Conn. L. Rptr. 521, 524) hold that Parsons and Morris
do not foreclose a claim for negligent infliction of emotional distress. See also Harrop v. Allied Printing Services, Inc., Superior Court, judicial district of Hartford, Docket No. 583561 (March 23, 2000, Hennessy, J.) (26 Conn. L. Rptr. 703); Murphy v.Girouard Associates, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 171693 (February 22, 2000, Karazin, J.) (26 Conn. L. Rptr. 589). The court agrees with the latter view. In both Parsons and Morris, the question before the court was whether the plaintiff adequately stated a claim for negligent infliction of emotional distress in the termination context, not whether the plaintiff could maintain such a cause of action outside of the termination context. Here, the Plaintiff not only alleges that the termination process caused him emotional distress, but also alleges that the negligent conduct of the Defendant prior to his termination caused such harm.
A trial court, of course, is bound by Supreme Court precedent; Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 195 (1996); however, "[a]n opinion is to be read in connection with the facts on which it is based"; (Internal quotation marks omitted.) Zoning Commission v.Fairfield Resources Management, Inc., 41 Conn. App. 89, 109 (1996); and "the precedential value of a decision should be limited to the four corners of the decision's factual setting." State v. Oullette,190 Conn. 84, 91 (1983). Although the Parsons court speaks of the "employment context" when addressing a claim for negligent infliction of emotional distress; Parsons v. United Technologies Corp., supra,243 Conn. 88; and the Morris court speaks of the "termination process";Morris v. Hartford Courant Co., supra, 200 Conn. 682; the facts of each of those cases concerned only the events surrounding each of the plaintiffs' terminations. Here, the Plaintiff alleges that his emotional distress arose not simply from his termination, but also from the Defendant's allegedly false accusations of theft and forgery, which took place prior to his termination.
Moreover, the court notes that if the Defendant's interpretation ofParsons is correct, then two problems arise in this area of the law, neither of which is addressed by that court. First, because the General CT Page 3132-dm Assembly excluded mental and emotional impairment from the definition of "personal injury" with the passage of P.A. 93-228, no remedy for negligent infliction of emotional distress would exist for conduct arising out of the overall employment context, but such a remedy would exist in the termination context. Karanda v. Pratt Whitney Aircraft, Inc., supra,24 Conn. L. Rptr. 524; General Statutes § 31-275; P.A. 93-228. Second, as this case illustrates, a claim for intentional infliction of emotional distress does exist in the overall employment context, but a cause of action for negligent infliction of emotional distress would not. The fact that the Parsons opinion fails to provide any reason for these results is evidence that the Supreme Court did not intend to foreclose a claim for negligent infliction of emotional distress in all employment cases outside of the termination context.
The court concludes that the Plaintiff may bring a claim for negligent infliction of emotional distress under the circumstances of this case. Accordingly, the motion to strike count five is denied.
 COUNT SIX
The Defendant moves to strike count six, claiming that it fails to sufficiently allege a claim of false light and invasion of privacy, because, according to the Defendant, no dissemination to the general public has been alleged. The Plaintiff counters that the "Defendant made statements to Biff's Package Store and to the landlady," both members of the public. (Plaintiff's memorandum in opposition, p. 8.) Connecticut has recognized a cause of action for invasion of privacy. Perkins v. Freedomof Information Commission, 228 Conn. 158, 170 n. 16 (1993); Goodrich v.Waterbury Republican-American, Inc., 188 Conn. 107, 127 (1982). The Restatement contains this explication of the requirement of publicity:
 "Publicity" as it is used in this Section differs from "publication," as that term is used . . . in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . . . Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On CT Page 3132-dn the other hand, any publication in a newspaper or magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in [the invasion of privacy context.] The distinction, in other words, is one between private and public communication."
(Emphasis added.) 3 Restatement (Second), Torts § 652D. Comment (a), pp. 384-85 (1976). Here, the Plaintiff does not argue that the Defendant's employees or the police are members of the general public for the purposes of this cause of action, he only argues that the Defendant told the liquor store owners and the Plaintiff's landlady, a total of three people, of the alleged theft. The Plaintiff does allege not anything that would lead to the conclusion that this matter is substantially certain to become one of public knowledge. Accordingly, the motion to strike count six is granted.
 PRAYERS FOR RELIEF
The Defendant moves to strike each prayer for exemplary damages against it, because exemplary damages are not "recoverable against an employer for claims premised upon vicarious liability." (Defendant's memorandum in support, p. 20.) The Plaintiff, citing United Aircraft Corp. v.International Assn. of Machinists, 161 Conn. 79 (1971), argues that when an employer ratifies the acts of its servants, the principal becomes liable for exemplary damages (Plaintiff's memorandum in opposition, p. 9); however, United Aircraft does not support this contention. In UnitedAircraft, a statute existed which authorized such damages. Here, the Plaintiff does not allege that any statute authorizes exemplary or punitive damages. It is well settled that punitive damages are not available under common law agency principles of vicarious liability.Maisenbacker v. Society Concordia, 71 Conn. 369, 380 (1899); Van Eck v.MBNA America Bank, Superior Court, judicial district of New Haven at New Haven, Docket No. 424382 (September 28, 1999, Levin, J.); Kalinowski v.Waddell Reed, Inc., Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0146924S (October 14, 1998, Sheldon, J.) (23 Conn. L. Rptr. 172, 173). Accordingly, the motion to strike each of the Plaintiff's prayers for punitive damages, found in counts one, two, three, five and six, is granted.
Finally, the Defendant moves to strike each prayer for attorney's CT Page 3132-do fees. The Defendant argues that attorney's fees are not available absent statutory or contractual authority, and that no such allegations are present in any count. (Defendant's memorandum in support, p. 21.) The court agrees. Rizzo Pool Co. v. Del Grosso, 240 Conn. 58, 72 (1997). In response, the Plaintiff contends that because he alleges that an implied contractual relationship existed between the parties, attorney's fees and expenses are available to a successful party. (Plaintiff's memorandum in opposition, p. 10.) The Plaintiff has cited no case that holds that the mere existence of a contractual relationship between the parties, with no provision providing for attorney's fees, gives rise to a claim for attorney fees. Accordingly, the motion to strike the prayers for attorney's fees, found in each count, is granted.
Accordingly, the Defendant's motion to strike is denied as to counts four and five; granted as to counts two, three, and six; and also granted as to each of the Plaintiff's prayers for punitive damages and attorney's fees.
Hiller, J.