# MICHAEL PERODEAU, SR. *v.* CITY OF HARTFORD ET AL.
## (SC 16468)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued November 2, 2001—officially released March 26, 2002

*James S. Brewer*, for the appellant (plaintiff).

*Wesley W. Horton*, with whom were *Daniel J. Krisch* and, on the brief, *John P. Shea, Jr.*, assistant corporation counsel, and *Trenton C. Haas*, certified legal intern, for the appellees (defendants).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Michael Soltis* and *Susan Krell* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Philip A. Murphy, Jr.*, and *Cynthia Watts Elder* filed a brief for the commission on human rights and opportunities as amicus curiae.

*Jonathan L. Gould* and *Barbara E. Gardner* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

ZARELLA, J. The principal issues in this case, which comes to us on certification from the United States District Court for the District of Connecticut pursuant

to General Statutes § 51-199b (d),[1] are: (1) whether General Statutes § 46a-60 (a) (1)[2] imposes civil liability against individual municipal employees and/or their supervisors if their actions constitute a discriminatory practice as defined in the statute; and (2) whether an individual municipal employee may be found liable for negligent infliction of emotional distress arising out of conduct occurring in the context of a continuing employment relationship, as distinguished from conduct occurring in the context of the termination of employment. We answer both questions in the negative.

The District Court's certification order reveals the following relevant facts and procedural history. The plaintiff, Michael Perodeau, Sr., is employed by the named defendant, the city of Hartford (city), in its police department. He is a single parent. The individual defendants, Joseph Croughwell, Robert Casati, Paul Cherniak and James Blanchette, were at all relevant times, respectively, the chief, the deputy chief, a sergeant and a lieutenant in the Hartford police department.

The plaintiff was hired by the Hartford police department as a police officer in 1979. In 1989, he was promoted to detective in the narcotics division. In 1992,

---

[1] General Statutes § 51-199b (d) provides: "The Supreme Court may answer a question of law certified to it by a court of the United States or by the highest court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

[2] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

he transferred from the narcotics division to the evidentiary services division where he worked until January, 1998, when the department transferred him to the north police services area as a burglary detective.

The plaintiff claims that his transfer to the north police services area was in response to his alleged refusal to be available for callbacks.[3] He contends that Cherniak, his direct supervisor, falsely and maliciously claimed that he refused nine callbacks from July, 1997, to December, 1997. The plaintiff also claims that it was a policy and custom of the evidentiary services division to accommodate officers when they could not cover a callback shift, that many officers in other divisions were allowed to limit their availability to work callback shifts when they had business or family demands, and that female and single mother officers in other divisions were not forced to take callbacks.

In June, 1998, the plaintiff filed a complaint with the commission on human rights and opportunities against the city, Casati and Cherniak, alleging age and sex discrimination. In the present case, the plaintiff claims that Blanchette subsequently retaliated against him for filing the complaint by verbally disparaging him in front of other officers and by falsely accusing him of smoking in a photography laboratory at the police department. The plaintiff also claims that all of the defendants condoned or acquiesced in his wrongful treatment, refused to protect him from harassment and unlawful discipline, and refused to ascertain the true facts and to punish wrongdoers.

On April 30, 1999, the plaintiff filed a complaint in the District Court alleging violations of 42 U.S.C. § 1983

---

[3] The term "callback" is not defined in the record. It appears, however, that a "callback" occurs when an employee has left work at the end of a scheduled shift and is then requested to return to work for an unscheduled shift.

(Sup. 1999)[4] by the individual defendants; violations of 42 U.S.C. § 2000e-2[5] by the city; violations of 29 U.S.C. § 621 et seq.[6] by all of the defendants; retaliation by all of the defendants; violations of General Statutes §§ 46a-58[7] and 46a-60 by all of the defendants; negligent infliction of emotional distress by all of the defendants; and intentional infliction of emotional distress by all of the defendants. The defendants moved to dismiss the plaintiff's claim against the city pursuant to 42 U.S.C. § 1983; his claim against the individual defendants pursuant to

---

[4] Title 42 of the United States Code, § 1983 (Sup. 1999), provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[5] Title 42 of the United States Code, § 2000e-2, provides in relevant part: "(a) Employer practices

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. . . ."

[6] Title 29 of the United States Code, § 621 et seq., prohibits arbitrary age discrimination in employment.

[7] General Statutes § 46a-58 (a) provides: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability."

29 U.S.C. § 621 et seq.; his claim against the individual defendants pursuant to § 46a-60; and his claims of negligent and intentional infliction of emotional distress as to all of the defendants. The District Court granted the motion to dismiss with respect to all claims except the claim against the individual defendants pursuant to § 46a-60 and the claim against the individual defendants for negligent infliction of emotional distress.[8] With respect to those claims, the District Court recognized that this court has never considered whether § 46a-60 (a) (1) imposes liability on individual employees or whether individual employees may be held liable for negligent infliction of emotional distress for conduct arising in a continuing employment relationship. Accordingly, the District Court certified those questions to this court.

I

We first consider whether § 46a-60 (a) (1) imposes liability on individual employees.[9] The plaintiff con-

---

[8] The court dismissed the claims of intentional and negligent infliction of emotional distress by the city on the grounds that the plaintiff had not filed a notice of claim as required by General Statutes §§ 7-101a (d) and 7-465 (a).

[9] We note that decisions on this issue by various Superior Courts and the District Court are split. Compare *Swanson* v. *Envirotest System, Inc.*, United States District Court, Docket No. 3:98CV751 (D. Conn. December 18, 1998) (individual employees may be held liable under § 46a-60 [a] [1]); *Thompson* v. *Service Merchandise, Inc.*, United States District Court, Docket No. 3:96CV1602 (D. Conn. August 11, 1998) (same); *Armstrong* v. *Chrysler Financial Corp.*, United States District Court, Docket No. 3:97CV1557 (D. Conn. May 13, 1998) (same); *Valenti* v. *Carten Controls, Inc.*, United States District Court, Docket No. 3:94CV1769 (D. Conn. December 3, 1997) (same); *Murphy* v. *Burgess*, United States District Court, Docket No. 3:96CV01987 (D. Conn. July 16, 1997) (same); *Dombrowski* v. *Envirotest System*, Superior Court, judicial district of New Haven, Docket No. CV 980412518 (August 10, 1999) (25 Conn. L. Rptr. 272) (same); *Lueneburg* v. *Mystic Dental Group*, Superior Court, judicial district of New London, Docket No. 535839 (August 1, 1996) (17 Conn. L. Rptr. 219), amended conclusion (August 22, 1996) (17 Conn. L. Rptr. 409) (same); with *Wasik* v. *Stevens Lincoln-Mercury, Inc.*, United States District Court, Docket No. 3:98CV1083 (D. Conn. March 27, 2000) (individual employers may not be held liable under § 46a-60 [a] [1]); *Hebb* v. *Connecticut Water Co.*, United States District Court, Docket No.

tends that, because the term "employer" in § 46a-60 is defined in General Statutes § 46a-51 (10)[10] to encompass any "person," which is defined in General Statutes § 46a-51 (14)[11] to include an individual, an individual employee may be liable for violations of § 46a-60. This contention is contingent upon his claim that the phrase "with three or more persons in his employ" in § 46a-51 (10) modifies only the word "employer" and not the word "person." We disagree.

Whether § 46a-60 (a) (1) imposes liability on individual employees is a matter of statutory interpretation "over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and com-

3:98CV01349 (D. Conn. July 21, 1999) (same); *Le* v. *Dept. of Transportation,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV 980491121S (August 4, 1999) (same); *Sefsik* v. *Fiandra,* Superior Court, judicial district of Danbury at Danbury, Docket No. 326723 (August 5, 1998) (same); *Nwachukwu* v. *Dept. of Labor,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 970573595S (December 15, 1997) (21 Conn. L. Rptr. 553) (same); *Martinez-Duffy* v. *DeJesus,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 970545193S (May 1, 1996) (17 Conn. L. Rptr. 64) (same); see also *Kavy* v. *Board of Education,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV 990492921S (August 3, 1999) (holding that individual employees may not be held liable under sexual harassment statute, § 46a-60 [a] [8]); *Walters* v. *Homestaff Health Care,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 950146961S (February 7, 1996) (same).

[10] General Statutes § 46a-51 (10) provides: " 'Employer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in his employ . . . ."

[11] General Statutes § 46a-51 (14) provides: " 'Person' means one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, receivers and the state and all political subdivisions and agencies thereof . . . ."

mon law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

We begin our analysis with a review of the relevant statutory provisions. Section 46a-60 (a) (1) provides in relevant part that "[i]t shall be a discriminatory practice in violation of this section . . . [f]or an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to blindness . . . ." General Statutes § 46a-51 (10) provides that the term " '[e]mployer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in his employ . . . ." General Statutes § 46a-51 (14) provides in relevant part that the term " '[p]erson' means one or more individuals . . . ."

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." (Internal quotation marks omitted.) *State* v. *Rivera*, 250 Conn. 188, 200 n.12, 736 A.2d 790 (1999). The dictionary defines the word "employer" to mean "[o]ne who employs, esp. for wages or salary . . . ." Webster's New International Dictionary (2d Ed.). It would defy common sense to conclude that the legislature intended in § 46a-51 (10) to change the common meaning of the word "employer" to include

"persons" who do not employ anyone, while excluding "employers" who employ fewer than three employees. Indeed, the very fact that the legislature used the term "employer" within its definition of "employer" in § 46a-51 (10) indicates that it intended the word to have its common meaning, and that the definition was intended merely to narrow the class of "employers"—understood in its ordinary sense—to which the Fair Employment Practices Act, General Statutes § 46a-51 et seq., applies. Otherwise, the definition would be internally inconsistent.

We further note that the legislature recently amended § 46a-51 (10) by substituting the phrase "person's or employer's" for the word "his," so that, effective October 1, 2001, that section provides: " 'Employer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in *such person's or employer's* employ . . . ." (Emphasis added.) Public Acts 2001, No. 01-28, § 1. The legislative history is silent on the reason for this change, but we reasonably may assume that it was made to render the language of the statute gender neutral, and not to change the scope of the statute. In light of this fact, it appears that the legislature intended the term "his" in the prior version of the statute to mean "person's or employer's." Accordingly, we conclude that the phrase "with three or more persons in his employ" in § 46a-51 (10) was intended to modify both "person" and "employer" and, consequently, that § 46a-60 (a) (1) does not impose liability on individual employees.[12]

In support of our conclusion, we note that when the legislature has intended for the provisions of the Fair Employment Practices Act to apply to persons other

---

[12] We recognize that, under our reading, the phrase "or employer" in § 46a-51 (10) is rendered redundant. Nevertheless, we conclude that this reading is preferable to the interpretation, urged by the plaintiff, that the word "employer" may mean "employee."

than employers, it has made its intention clear. For example, in § 46a-60 (a) (4), (5) and (6),[13] by contrast to § 46a-60 (a) (1), the legislature specifically referred to persons as well as to employers.

The weight of federal authority further bolsters our conclusion that individuals who are not employers may not be held liable under § 46a-60 (a) (1). This court previously has recognized that in construing the Fair Employment Practices Act "we are properly guided by the case law surrounding federal fair employment legislation . . . ." (Citation omitted; internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 108, 653 A.2d 782 (1995). The majority of the United States Circuit Courts of Appeals that have considered the issue, including the Court of Appeals for the Second Circuit, have concluded that 42 U.S.C. § 2000e (b), which defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person," does not provide for individual liability. See *Dici* v. *Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996);

[13] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . .

"(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84;

"(5) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so;

"(6) For any person, employer, employment agency or labor organization, except in the case of a bona fide occupational qualification or need, to advertise employment opportunities in such a manner as to restrict such employment so as to discriminate against individuals because of their race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

*Haynes* v. *Williams*, 88 F.3d 898, 901 (10th Cir. 1996); *Williams* v. *Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *Gary* v. *Long*, 59 F.3d 1391, 1399 (D.C. Cir.), cert. denied sub nom. *Gary* v. *Washington Metropolitan Area Transit Authority*, 516 U.S. 1011, 116 S. Ct. 569, 133 L. Ed. 2d 493 (1995); *Grant* v. *Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir.), cert. denied, 513 U.S. 1015, 115 S. Ct. 574, 130 L. Ed. 2d 491 (1994); *Miller* v. *Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993), cert. denied sub nom. *Miller* v. *LaRosa*, 510 U.S. 1109, 114 S. Ct. 1049, 127 L. Ed. 2d 372 (1994); *Busby* v. *Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); see also *Birkbeck* v. *Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir.), cert. denied, 513 U.S. 1058, 115 S. Ct. 666, 130 L. Ed. 2d 600 (1994) (holding that similar definition of employer in Age Discrimination in Employment Act; 29 U.S.C. § 621 et seq.; does not provide for individual liability); but see *Paroline* v. *Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989) (when employee exercises sufficient supervisory authority over plaintiff, employee is employer for purposes of 42 U.S.C. § 2000e [b]), aff'd in part, rev'd in part, 900 F.2d 27 (1990); *Hamilton* v. *Rodgers*, 791 F.2d 439, 442–43 (5th Cir. 1986) (person is agent of employer if person participated in decision-making process that forms basis of discrimination and agent is individually liable).

In *Tomka* v. *Seiler Corp.*, supra, 66 F.3d 1314, the Court of Appeals for the Second Circuit rejected the plaintiff's argument that individual employees who are agents of an employer may be held individually liable, concluding that it was "inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." (Internal quotation marks omitted.) Id., citing *Miller* v. *Maxwell's International, Inc.*, supra, 991 F.2d 587 n.2; see *Haynes* v. *Williams*, supra, 88

F.3d 901 (same); *Grant* v. *Lone Star Co.*, supra, 21 F.3d 652 (same). The court in *Miller* v. *Maxwell's International, Inc.*, supra, 587, had concluded that "[t]he obvious purpose of this [agent] provision was to incorporate respondeat superior liability into the statute." (Internal quotation marks omitted.)

In *Murphy* v. *Burgess*, United States District Court, Docket No. 3:96CV01987 (D. Conn. July 16, 1997), however, the court distinguished § 46a-60 (a) (1) from the federal statute. Specifically, the court concluded that, because the federal statute applies to employers with fifteen or more employees, while § 46a-60 (a) (1) applies to employers with three or more employees, the inconsistency, noted in *Tomka*, between protecting small employers while allowing individual employees to be sued, did not arise under the Connecticut statute.[14] See also *Lueneburg* v. *Mystic Dental Group*, Superior Court, judicial district of New London, Docket No. 535839 (August 1, 1996) (17 Conn. L. Rptr. 219, 221), amended (August 22, 1996) (17 Conn. L. Rptr. 409) (concluding that because § 46a-60 [a] [1] "imposes liability on business entities with very small numbers of employees, there was no intent by the legislature to protect supervisory employees from individual liability"). We do not agree. Both the Congress and the Connecticut legislature have evinced an intention to protect employers with fewer than a certain number of employees from suit under their respective fair employment statutes. The reasoning in *Tomka* is no less compelling

[14] The court in *Murphy* v. *Burgess*, United States District Court, Docket No. 3:96CV01987 (D. Conn. July 16, 1997), also noted that the Connecticut statute was different because, under that statute, unlike the federal statute, liability is not calibrated to the size of the employer. Id., citing *Tomka* v. *Seiler Corp.*, supra, 66 F.3d 1315; see also 42 U.S.C. § 1981a (b) (3). Therefore, under the Connecticut statute, a supervisor's liability would not depend on the size of the employer. The court concluded that this difference mitigated the incongruity of subjecting supervisors to individual liability.

merely because that number is smaller under the Connecticut statute than under the federal statute.

We recognize that the ambiguity in the federal statute arises from the phrase "and any agent of such a person"; 42 U.S.C. § 2000e (b); and not from any analog to the phrase "person or employer" in § 46a-51 (10), on which the plaintiff in this case exclusively relies.[15] Nevertheless, we conclude that the reasoning of the federal cases concerning the individual liability of agents is equally applicable to the plaintiff's argument that "persons" who are not employers may be held liable under § 46a-60 (a). If it is incongruous to hold an employer's agent individually liable, it is equally incongruous to hold an employee who is not an agent liable.

Our review of case law from other jurisdictions construing state statutes similar to § 46a-51 (10)[16] and § 46a-

[15] The Connecticut Employment Lawyers Association, as amicus, argues, however, that the "agent" language in § 46a-60 (a) (1) gives rise to individual liability. This argument is squarely met by the reasoning of the federal cases, which we have found persuasive.

[16] See Cal. Gov't Code § 12926 (d) (Deering Sup. 2001) (providing in relevant part that " '[e]mployer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly"); Fla. Stat. c. 760.02 (7) (2001) (providing that " '[e]mployer means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person"); Iowa Code § 216.2 (7) (2001) (providing in relevant part that " '[e]mployer' means . . . every . . . person employing employees within the state"); Ky. Rev. Stat. Ann. § 344.030 (2) (Michie 1997) (providing in relevant part that " '[e]mployer' means a person who has eight [8] or more employees within the state in each of twenty [20] or more calendar weeks in the current or preceding calendar year and an agent of such a person"); Mo. Rev. Stat. § 213.010 (7) (2000) (providing in relevant part that "[e]mployer includes . . . any person employing six or more persons within the state, and any person directly acting in the interest of an employer"); N.Y. Exec. Law § 292 (5) (McKinney 2001) (providing that "[t]he term 'employer' does not include any employer with fewer than four persons in his employ"); Or. Rev. Stat. § 659.010 (6) (1987) (providing in relevant part that " '[e]mployer' means any person . . . who in this state, directly or through an agent, engages or utilizes the personal service of one or more employees"); Penn. Stat. Ann. tit. 43, § 954 (b) (West 1991) (providing in relevant part that "[t]he term 'employer' includes . . . any person

60 (a) (1) also bolsters our conclusion. The majority of courts that have considered the issue have concluded that individuals may not be held liable under the relevant state's employment discrimination statute. See *Reno* v. *Baird*, 18 Cal. 4th 640, 957 P.2d 1333, 76 Cal. Rptr. 2d 499 (1998); *Huck* v. *Mega Nursing Services, Inc.*, 989 F. Sup. 1462 (S.D. Fla. 1997); *Effinger* v. *Philip Morris, Inc.*, 984 F. Sup. 1043 (W.D. Ky. 1997); *Lenhardt* v. *Basic Institute of Technology, Inc.*, 55 F.3d 377 (8th Cir. 1995) (construing Missouri statute); *Patrowich* v. *Chemical Bank*, 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984); *Ballinger* v. *Klamath Pacific Corp.*, 135 Or. App. 438, 898 P.2d 232 (1995); *Diep* v. *Southwark Metal Mfg. Co.*, United States District Court, Docket No. 00-6136 (E.D. Pa. March 19, 2001); *Frizzell* v. *Southwest Motor Freight, Inc.*, 906 F. Sup. 441 (E.D. Tenn. 1995); *Callaway* v. *Hafeman*, 628 F. Sup. 1478 (W.D. Wis. 1986); but see *Vivian* v. *Madison*, 601 N.W.2d 872 (Iowa 1999) (concluding that Iowa statute does impose individual liability); *Iacampo* v. *Hasbro, Inc.*, 929 F. Sup. 562 (D.R.I. 1996) (same with respect to Rhode Island statute); *St. Peter* v. *Ampak-Division of Gatewood Products, Inc.*, 199 W. Va. 365, 484 S.E.2d 481 (1997) (same with respect to West Virginia statute).[17]

---

employing four or more persons within the Commonwealth"); Tenn. Code Ann. § 4-21-102 (4) (1998) (providing in relevant part that " '[e]mployer' includes . . . persons employing eight [8] or more persons within the state, or any person acting as an agent of an employer, directly or indirectly"); W. Va. Code Ann. § 5-11-3 (d) (Michie 1999) (providing in relevant part that "[t]he term 'employer' means . . . any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year"); Wis. Stat. § 111.32 (6) (a) (West 1997) (providing in relevant part that " '[e]mployer' means . . . any . . . person engaging in any activity, enterprise or business employing at least one individual").

[17] As with the federal statute, we recognize that none of the other state employment discrimination statutes contain the ambiguous "person or employer" language contained in § 46a-51 (10). Nevertheless, for the same reason that we find the cases construing the federal statute persuasive, we find the cases construing the state statutes persuasive.

Of the cases concluding that individuals may not be held liable under the relevant state's fair employment law, *Reno* v. *Baird,* supra, 18 Cal. 4th 640, provides the most comprehensive analysis. The statute under review in that case defined " '[e]mployer' " as "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ." Cal. Gov't Code § 12926 (d) (Deering Sup. 2001). The court first noted that California courts often look to federal cases construing federal discrimination law for guidance in interpreting the state statute and that, in a previous case, the California Court of Appeal had recognized the " 'clear and growing consensus' " among the federal courts that individuals may not be held liable. *Reno* v. *Baird,* supra, 648; *Janken* v. *GM Hughes Electronics,* 46 Cal. App. 4th 55, 67, 53 Cal. Rptr. 2d 741 (1996). It concluded, as we have, that the reasoning of those cases—that it would be incongruous to exempt small employers from liability while imposing liability on individual nonemployers—was equally applicable to the California statute. *Reno* v. *Baird,* supra, 662–63. It also concluded that the legislature did not intend for individuals to be subject "to the ever-present threat of a lawsuit each time they make a personnel decision." Id., 663. Accordingly, the court held that individuals could not be held liable under California's employment discrimination law.

The court in *Reno* also noted that the California Court of Appeal previously had rejected the "chamber of horrors" argument that barring individual liability would "open the floodgates of discrimination, would give supervisors a free pass to discriminate, would liberate supervisors to discriminate with impunity, and the like." (Internal quotation marks omitted.) Id., 654, quoting *Janken* v. *GM Hughes Electronics,* supra, 46 Cal. App. 4th 76. That argument was also rejected in *Lenhardt* v. *Basic Institute of Technology, Inc.,* supra, 55 F.3d 381.

Both the *Janken* court and the *Lenhardt* court con-
cluded that "[a]n employer subjected to well-founded
claims of employment discrimination as a result of an
employee's intentional acts of discrimination is not
likely to look favorably upon the offending employee.
To the contrary, the employer, to protect its own inter-
ests and to avoid further liability, almost certainly will
impose some form of discipline upon the offending
employee. That discipline may include a free pass to
the unemployment line, a result that would seem partic-
ularly likely if the employee engages in repeated acts
of intentional discrimination against fellow employees."
(Internal quotation marks omitted.) *Reno* v. *Baird*,
supra, 18 Cal. 4th 654–55, quoting *Janken* v. *GM Hughes
Electronics*, supra, 76–77, and *Lenhardt* v. *Basic Insti-
tute of Technology, Inc.*, supra, 381. We find this reason-
ing persuasive.

For all of these reasons, we conclude that § 46a-60a
(a) (1) does not impose liability on individual employ-
ees. Accordingly, we answer the first certified question
in the negative.

II

We next consider whether an individual municipal
employee may be found liable for negligent infliction
of emotional distress arising out of actions or omissions
occurring within the context of a continuing employ-
ment relationship, as distinguished from actions or
omissions occurring in the termination of employment.
We decline to extend that tort so far.

A

Before addressing the merits of this question, how-
ever, we must consider a threshold question, namely,
whether, in excluding emotional distress claims that do
not arise from physical injury or occupational disease
from the compensability provisions of General Statutes

§ 31-275 et seq., the Workers' Compensation Act (act), the legislature indicated an intent to preclude such claims altogether. The plaintiff asserts that, because his claim for negligent infliction of emotional distress is not compensable under the act, he is not barred by the exclusivity provisions of the act from making this claim. See General Statutes §§ 31-284 and 31-293a.[18] We agree with the plaintiff.

We first note that § 31-293a provides that the act applies only "[i]f an employee . . . has a right to benefits or compensation under this chapter on account of injury . . . ." In this case, the plaintiff has no right to compensation for his alleged emotional injury under the act. See General Statutes § 31-275 (16) (B) (ii).[19] Accordingly, the plain language of the act indicates that its exclusivity provisions do not apply.

We also note that, although this court previously has not considered directly the question of whether an employee may bring a common-law tort claim for an emotional injury arising out of his employment that is not covered by the act, we addressed it indirectly in *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 752

---

[18] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ."

General Statutes § 31-293a provides in relevant part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ."

[19] General Statutes § 31-275 (16) (B) provides in relevant part: " 'Personal injury' or 'injury' shall not be construed to include . . .

"(ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ."

A.2d 1069 (2000). In that case, the plaintiff, who had been sexually assaulted in her workplace, sought to bring a claim against her employer for negligent infliction of emotional distress. We concluded that the plaintiff's emotional injury arose from the physical assault upon her and that the injury was, therefore, covered by the act. Id., 226. It is clear from our analysis in that case, however, that we assumed that, if the injury had not been compensable under the act, the plaintiff would have been entitled to bring a common-law tort claim against her employer. Id., 223–27.

In addition, the United States District Court for the District of Connecticut has concluded in a number of cases that tort actions for emotional injuries that are not compensable under the act are not barred by the exclusivity provisions of the act. See *Abate* v. *Circuit-Wise, Inc.*, 130 F. Sup. 2d 341, 345–46 (D. Conn. 2001) (claim for emotional injuries that did not arise from physical touchings not barred by act); *Bimler* v. *Stop & Shop Supermarket Co.*, 965 F. Sup. 292, 302 (D. Conn. 1997) (claim for damages for emotional distress arising out of termination of employment not barred by act); *Bennett* v. *Beiersdorf, Inc.*, 889 F. Sup. 46, 51 (D. Conn. 1995) (dismissing negligent infliction of emotional distress claim without prejudice to plaintiff to replead so as to exclude injuries for which act provides remedy); but see *Gregory* v. *Southern New England Telephone Co.*, 896 F. Sup. 78, 84 (D. Conn. 1994) (claim for negligent infliction of emotional distress is precluded by act); *Vorvis* v. *Southern New England Telephone Co.*, 821 F. Sup. 851, 856 (D. Conn. 1993) (same). Likewise, a number of Connecticut courts have determined that tort actions for noncompensable emotional injuries are not barred by the act. See *Karanda* v. *Pratt & Whitney Aircraft*, Superior Court, judicial district of Hartford, Docket No. CV 98582025S (May 10, 1999) (24 Conn. L. Rptr. 521) (employee may bring common-law tort action

against employer for mental or emotional impairment arising out of and in course of employment that does not arise from physical injury or occupational disease); *Carr* v. *Devereux Foundation, Inc.*, Superior Court, judicial district of Litchfield, Docket No. CV 950067464 (September 6, 1995) (same); *Stepney* v. *Devereux Foundation*, Superior Court, judicial district of Litchfield, Docket No. CV 0065885 (July 17, 1995) (14 Conn. L. Rptr. 483) (same); *Silva* v. *Stop & Shop Cos.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 920295633 (January 12, 1993) (same); cf. *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 807–809, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993) (claim for negligent infliction of emotional distress arising out of termination not barred by act because termination does not arise out of employment).

In *Stepney* v. *Devereux Foundation*, supra, 14 Conn. L. Rptr. 485, the trial court reasoned that "[t]he Workers' Compensation Act compromises an employee's right to a common-law tort action for work-related injuries in return for relatively quick and certain compensation. . . . When an injury is expressly excluded from coverage under the act, the employe[e]'s right to pursue a common-law remedy for the injury is no longer compromised. The exclusivity provided by the workers' compensation statute is a quid pro quo, and a right of action should only be deemed taken away from an employee where something of value has been put in its place." (Citation omitted.) We agree with this reasoning. Accordingly, we conclude that the act itself does not preclude the plaintiff from bringing a common-law tort claim against the individual defendants for negligent infliction of emotional distress.[20]

[20] We also note that General Statutes § 7-465 (a), which provides for the indemnification of municipal employees by municipalities for certain damages awarded for civil rights infringements or physical injury, provides the following exception: "This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees

## B

We now consider the merits of the second certified question, namely, whether individual municipal employ-

are engaged in the scope of their employment for such municipality *if the employee suffering such injury . . . has a right to benefits or compensation under chapter 568 [the act] by reason of such injury. If an employee . . . has a right to benefits or compensation under chapter 568* by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee . . . shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ." (Emphasis added.) Because the plaintiff's alleged injury is not compensable under the act, the individual defendants are subject to § 7-465. We note that, in the present case, the District Court dismissed the plaintiff's claim against the city for failure to comply with the notice requirements of § 7-465. See footnote 8 of this opinion. This court previously has held, however, that "the liability of the municipality, *but not that of the municipal employee*, is dependent upon the giving of proper statutory notice. . . . [A]n injured party may maintain a common-law action against a municipal employee covered by the statute, thereby avoiding those requirements which are unique to recovery under the indemnification statute." (Emphasis added.) *Fraser* v. *Henninger*, 173 Conn. 52, 56, 376 A.2d 406 (1977). "A plaintiff's failure to sustain his complaint against the municipality is no reason for turning the plaintiff out of court if he can sustain his complaint against the employee." Id., 57. Accordingly, we find nothing in § 7-465 that would bar the plaintiff's claim against the individual defendants.

General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such injury or,

ees may be found liable for negligent infliction of emotional distress arising out of actions or omissions occurring within the context of a continuing employment relationship, as distinguished from actions or omissions occurring in the context of termination of employment. We conclude that they may not.

We begin our analysis with a review of our case law pertaining to claims of negligent infliction of emotional distress in the employment context. In *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978), this court recognized for the first time that "recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." We concluded, rather, that, in such cases, "the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."[21] Id.

In *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986), we considered the plaintiff's claim that he had been wrongfully discharged and that the discharge constituted negligent infliction of emotional distress. We concluded that the discharge did not vio-

---

in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of such injury. If an employee or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee or, in the case of his death, his dependent, shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ."

[21] The dissent believes that our decision in *Montinieri* was misguided and would reconsider it. We do not address that issue because neither party has requested us to do so.

late any important public policy and, accordingly, did not fall within any exception to the employment at will doctrine. Id., 678–81. We also concluded that, despite the fact that the termination was not wrongful, there was "nothing in that doctrine . . . to preclude an action for unintentional infliction of emotional distress based upon unreasonable conduct of the defendant in the termination process." Id., 681–82. Thus, *Morris* stands for the proposition that a wrongful termination is not a necessary prerequisite for a claim of negligent infliction of emotional distress in the employment context.

In *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 700 A.2d 655 (1997), we again considered claims of wrongful discharge and negligent infliction of emotional distress. In that case, we concluded that the plaintiff had made out a prima facie case of wrongful discharge; id., 86–87; but, relying on *Morris*, we also concluded that "negligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.' " Id., 88. Accordingly, we concluded that "[t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Internal quotation marks omitted.) Id., 88–89. We found that "the actions that the defendant took in terminating the employment of the plaintiff, as alleged in his complaint, were not so unreasonable as to support a cause of action for negligent infliction of emotional distress." Id., 89. Thus, *Parsons* stands for the proposition that a wrongful termination is not, in and of itself, a sufficient basis for a claim of negligent infliction of emotional distress.

Accordingly, read together, *Morris* and *Parsons* merely stand for the proposition that, in cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress. The dispositive issue in each case was whether the defendant's conduct during the termination process was *sufficiently wrongful* that the "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm."[22] (Internal quotation marks omitted.) Id., 88; *Morris* v. *Hartford Courant Co.*, supra, 200 Conn. 683; *Montinieri* v. *Southern New England Telephone Co.*, supra, 175 Conn. 345.

The defendants concede that neither *Morris* nor *Parsons* stands for the proposition that a termination is a prerequisite for an employment-related negligent infliction of emotional distress claim, but, relying in part on a number of cases that have imposed that limitation, they urge this court to adopt that bright line rule in this case. Accordingly, we turn to a review of the cases that have considered this issue.

In *Malik* v. *Carrier Corp.*, 202 F.3d 97, 103–104 n.1 (2d Cir. 2000), the Second Circuit Court of Appeals concluded in dicta that, after *Morris* and *Parsons*, "[w]hether a viable emotional distress claim for negligent acts in the employment context exists under Connecticut law is . . . unclear." The court noted in *Malik*

---

[22] As we previously have observed, "[t]his condition differs from the standard foreseeability of the risk of harm requirement for negligence liability generally in that it focuses more precisely upon the nature of the harm to be anticipated as a prerequisite to recovery even [when] a breach of duty might otherwise be found . . . ." *Maloney* v. *Conroy*, 208 Conn. 392, 398, 545 A.2d 1059 (1988). Although we did not cite *Maloney* in *Parsons*, we reached the same conclusion, namely, that a breach of duty, specifically, a wrongful termination, was not in and of itself sufficient to establish a claim for negligent infliction of emotional distress.

that in *Karanda* v. *Pratt & Whitney Aircraft*, supra, Superior Court, Docket No. CV 98582025S, the court had reasoned that, because emotional distress injuries are no longer covered by the act, "the Supreme Court [of Connecticut] would permit a negligent infliction of emotional distress claim against an employer when no termination is alleged." (Internal quotation marks omitted.) *Malik* v. *Carrier Corp.*, supra, 103–104 n.1. The court in *Malik* was not required to determine whether such a claim would be allowed, however, because it concluded that, even if the claim were permitted under some circumstances, it would not be permitted under the circumstances of that case, in which the claim arose out of the employer's conduct during a legally mandated investigation into charges of sexual harassment. Id., 106.

In *Abate* v. *Circuit-Wise, Inc.*, supra, 130 F. Sup. 2d 346–47, the court acknowledged the decision in *Malik*, but, relying on *Parsons*, concluded that, as a matter of law, "a claim for negligent infliction of emotional distress in the employment context arises only when it is based on unreasonable conduct of the defendant in the termination process . . . ." Id., 346. Because the plaintiff had not been terminated, the court dismissed the claim. In reaching its conclusion, the court in *Abate* relied on, inter alia, *Gomez-Gil* v. *University of Hartford*, 63 F. Sup. 2d 191, 194 (D. Conn. 1999) (granting motion for summary judgment on claim for negligent infliction of emotional distress in employment context because no termination of employment), *Williams* v. *H.N.S. Management Co.*, 56 F. Sup. 2d 215, 221 (D. Conn. 1999) (same), and *White* v. *Martin*, 23 F. Sup. 2d 203, 208 (D. Conn. 1998) (dismissing claim for negligent infliction of emotional distress because no termination of employment), aff'd sub nom. *White* v. *Commission on Human Rights & Opportunities*, 198 F.3d 235 (2d Cir. 1999). *Abate* v. *Circuit-Wise, Inc.*, supra, 346; see

also id., 346–47 n.2, citing *Ferraro* v. *Stop & Shop Supermarket Co.*, Superior Court, judicial district of New Haven, Docket No. CV 960388031S (May 24, 2000) (concluding that there is no claim for negligent infliction of emotional distress when plaintiff has not been terminated); *Dollard* v. *Board of Education*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 99067338 (February 2, 2000) (striking claim for negligent infliction of emotional distress where plaintiff did not allege unlawful termination); *Rosenberg* v. *Meriden Housing Authority*, Superior Court, judicial district of New Haven, Docket No. CV 950377376 (October 29, 1999) (stating in dicta that negligent infliction of emotional distress claim must arise out of termination); *Hart* v. *Knights of Columbus*, Superior Court, judicial district of New Haven, Docket No. CV 980417112S (August 17, 1999) (25 Conn. L. Rptr. 304) (striking claim for negligent infliction of emotional distress where plaintiff did not allege unlawful termination); *Drolette* v. *Harborside Healthcare Corp.*, Superior Court, judicial district of New Haven, Docket No. CV 990266417 (August 9, 1999) (same); cf. *Abate* v. *Circuit-Wise, Inc.*, supra, 346–47 n.2, citing *Smith* v. *Hartford*, Superior Court, complex litigation docket at Tolland, Docket No. X07 CV 980070792S (July 14, 2000) (concluding that termination is not required to bring claim of negligent infliction of emotional distress); *Benson* v. *Northeast Utilities*, Superior Court, judicial district of Hartford, Docket No. CV 9905896997 (January 20, 2000) (same); *Martins* v. *Bridgeport Hospital*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 980356084S (October 6, 1999) (same); *Karanda* v. *Pratt & Whitney Aircraft*, supra, Superior Court, Docket No. CV 98582025S (concluding that Connecticut Supreme Court would permit negligent infliction of emotional distress claim against employer when no termination alleged).

In each of the cases cited by the court in *Abate* for the proposition that a termination is a prerequisite for a claim for negligent infliction of emotional distress in an employment setting, the court had provided no independent policy reasons for its conclusions, instead relying exclusively on our decisions in *Morris* and *Parsons*. As we already have indicated, however, that is a misreading of those decisions. Accordingly, we must consider, as a matter of first impression, the extent of the legal duty of individuals to avoid the infliction of emotional distress on others in the course of an ongoing employment relationship.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7. Although it has been said that no universal test for [duty] ever has been formulated; W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997). In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise "nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found . . . ." *Maloney* v. *Conroy*, 208 Conn. 392, 398, 545 A.2d 1059 (1988).

We concluded in *Morris* and *Parsons* that a termination may give rise to a claim for negligent infliction of emotional distress if the conduct under review

"involved an unreasonable risk of . . . emotional distress . . . that . . . might result in illness or bodily harm." *Montinieri* v. *Southern New England Telephone Co.*, supra, 175 Conn. 345. Implicit in this conclusion is a recognition that emotional distress that might result in illness or bodily harm is a foreseeable consequence of particularly egregious conduct involving a termination, which would, in turn, give rise to a duty to avoid such conduct.

The defendants contend, however, that individuals engaged in an *ongoing* employment relationship have no such duty because variations in individual sensitivity make emotional distress claims arising in that context unforeseeable. Specifically, the defendants claim that "a well-meaning reprimand inflicts no emotional injury on one employee, but wounds another employee to the quick. Or, to take another scenario, a supervisor who places a great deal of pressure on his supervisees to meet deadlines may be met with stoic endurance by the thick-skinned, but hurt feelings by the more delicate." We have no quarrel with the defendants' factual premise that individual sensitivities vary, but we reject their legal conclusion. An individual making an emotional distress claim must show that a *reasonable person* would have suffered "emotional distress . . . that . . . might result in illness or bodily harm"; *Montinieri* v. *Southern New England Telephone Co.*, supra, 175 Conn. 345; as the result of the defendant's conduct. See 3 F. Harper, F. James, & O. Gray, Torts (2d Ed. 1986) § 18.4, p. 691 ("Generally defendant's standard of conduct is measured by the [emotional] reactions to be expected of normal persons. . . . Activity may be geared to a workaday world rather than to the hypersensitive."). We cannot conclude that it is more difficult to foresee the emotional reactions of reasonable persons to wrongful conduct in the workplace than in other contexts. Consequently, emotional distress can be a

foreseeable injury in an ongoing employment relationship.

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. See, e.g., *Maloney* v. *Conroy*, [supra, 208 Conn. 400–401] (looking beyond foreseeability, this court imposed limitations on the right of a bystander to recover for emotional distress that allegedly resulted from medical malpractice of doctors in their treatment of the plaintiff's . . . mother). A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. W. Prosser & W. Keeton, supra, § 53, p. 358. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citation omitted; internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 241 Conn. 406; see also *Zamstein* v. *Marvasti*, 240 Conn. 549, 558, 692 A.2d 781 (1997) (test for existence of legal duty of care includes "a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff").

In *Jaworski*, this court recognized four factors to be considered in determining the extent of a legal duty as a matter of policy: (1) the normal expectations of the

participants in the activity under review; (2) the public policy of encouraging continued vigorous participation in the activity, while protecting the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. *Jaworski* v. *Kiernan*, supra, 241 Conn. 407.

We first consider the normal expectations of individuals in the context of an ongoing employment relationship. It is clear that such individuals reasonably should expect to be subject to routine employment-related conduct, including performance evaluations, both formal and informal; decisions related to such evaluations, such as those involving transfer, demotion, promotion and compensation; similar decisions based on the employer's business needs and desires, independent of the employee's performance; and disciplinary or investigatory action arising from actual or alleged employee misconduct. In addition, such individuals reasonably should expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like.

Thus, it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. There are few things more central to a person's life than a job, and the mere fact of being demoted or denied advancement may be extremely distressing. That is simply an unavoidable part of being employed. We recognize, however, that that does not mean that persons in the workplace should expect to be subject to conduct that "transgress[es] the bounds of socially tolerable behavior"; (internal quotation marks omitted) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 89; and that involves "an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in illness or bodily harm." *Montinieri* v. *Southern*

*New England Telephone Co.*, supra, 175 Conn. 345. Nevertheless, for the following reasons, we conclude that, when the employment relationship is ongoing, the public policies enumerated in *Jaworski* v. *Kiernan*, supra, 241 Conn. 407, outweigh the interests of persons subject to such behavior in the workplace in being compensated for their emotional injuries.

First, in an ongoing employment relationship, employees who fear lawsuits by fellow employees may be less competitive with each other, may promote the interests of their employer less vigorously, may refrain from reporting the improper or even illegal conduct of fellow employees, may be less frank in performance evaluations, and may make employment decisions such as demotions, promotions and transfers on the basis of fear of suit rather than business needs and desires. All of this conduct would contribute to a less vigorous and less productive workplace. We conclude that such a pervasive chilling effect outweighs the safety interest of employees in being protected from negligent infliction of emotional distress. In cases involving a termination of employment, on the other hand, the employee can no longer use the threat of a lawsuit to influence the conduct of his employer and fellow employees.

Second, in light of the inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims. We recognize that the line that we draw in the present case is somewhat arbitrary. This court previously has been willing to draw lines limiting liability, however, when "[t]here are fears of flooding the courts with spurious and fraudulent claims; problems of proof of the damage suffered; exposing [potential defendants] to an endless number of claims; and economic burdens on industry." (Internal quotation

marks omitted.) *Clohessy* v. *Bachelor*, 237 Conn. 31, 50–51, 675 A.2d 852 (1996); id., 51 (recognizing that limits that this court placed on cause of action for bystander emotional distress were "somewhat arbitrary," but concluding that they were "necessary in order not to leave the liability of a negligent defendant open to undue extension by the verdict of sympathetic juries" [internal quotation marks omitted]). We conclude that, although the rule that we adopt in this case may allow some legitimate emotional injuries to go uncompensated, the social costs of allowing such claims would outweigh the social benefits.

With respect to the fourth *Jaworski* factor, the case law of our sister states, the approaches of the various jurisdictions may be divided into four general categories: (1) jurisdictions that categorically do not recognize the tort of negligent infliction of emotional distress;[23] (2) jurisdictions that categorically do not recognize such claims in the employment context;[24] (3) jurisdictions holding that such claims are precluded by the respective

[23] See *Diefenderfer* v. *Ford Motor Co.*, 916 F. Sup. 1155, 1161 (M.D. Ala. 1995) (granting summary judgment for employer because Alabama does not recognize cause of action for negligent infliction of emotional distress); *Wallace* v. *Bryant School District*, 46 F. Sup. 2d 863, 866 (E.D. Ark. 1999) (granting summary judgment for employer because Arkansas does not recognize cause of action for negligent infliction of emotional distress); *Marrs* v. *Marriott Corp.*, 830 F. Sup. 274, 284 n.7 (D. Md. 1992) (granting summary judgment for employer because Maryland does not recognize claim of negligent infliction of emotional distress); *Taylor* v. *Pepsi-Cola Co.*, 196 F.3d 1106, 1111 (10th Cir. 1999) (affirming granting of summary judgment for employer on claim arising from termination because Oklahoma law does not recognize separate tort for negligent infliction of emotional distress).

[21] See *Pegues* v. *Emerson Electric Co.*, 913 F. Sup. 976, 983 (N.D. Miss. 1996) (dismissing employee's claim of negligent infliction of emotional distress because claim was at odds with doctrine of at-will employment and employee did not allege injury requiring medical treatment); *Conaway* v. *Control Data Corp.*, 955 F.2d 358, 361 (5th Cir. 1992) (Texas law does not recognize claim for negligent infliction of emotional distress in employment context).

state's workers' compensation scheme;[25] and (4) the majority of jurisdictions that consider employment-related claims for negligent infliction of emotional distress on the basis of whether the claim meets the elements of the claim under the relevant state's law.[26] Thus,

[25] *Delmonte* v. *Laidlaw Environmental Services, Inc.*, 46 F. Sup. 2d 89, 96 (D. Mass. 1999) (employee's claim for negligent infliction of emotional distress is barred by workers' compensation statute).

[26] See *Wasson* v. *Sonoma County Junior College District*, 4 F. Sup. 2d 893, 909 (N.D. Cal. 1997) (employee's claim of negligent infliction of emotional distress not barred by workers' compensation statute when it arises out of employer's violation of public policy); *Atsepoyi* v. *Tandy Corp.*, 51 F. Sup. 2d 1120, 1127 (D. Colo. 1999) (dismissing employee's claim of negligent infliction of emotional distress because employee did not allege presence in zone of danger or serious physical manifestation or mental illness); *Bigby* v. *Big 3 Supply Co.*, 937 P.2d 794, 801 (Colo. App. 1996) (claim for negligent infliction of emotional distress based solely on violation of state discrimination law not cognizable because statute limits remedy to reinstatement and back pay); *Kun* v. *Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Sup. 13, 20 (D.D.C. 1996) (dismissing employee's claim for negligent infliction of emotional distress because employee did not allege direct physical injury or presence in zone of physical danger); *Landry* v. *Florida Power & Light Corp.*, 799 F. Sup. 94, 96 (S.D. Fla. 1992) (dismissing employee's claim for negligent infliction of emotional distress because employee did not allege physical injury); *Ross* v. *Stouffer Hotel Co.*, 76 Haw. 454, 465–66, 879 P.2d 1037 (1994) (granting summary judgment for employer on claim for negligent infliction of emotional distress because employee did not prove injury to property or person); *Ryan* v. *Illinois Dept. of Children & Family Services*, 963 F. Sup. 1490, 1513 (C.D. Ill. 1997) (granting summary judgment for employer because employees had not shown elements of bystander distress), rev'd in part on other grounds, 185 F.3d 751 (7th Cir. 1999); *Dirksen* v. *Springfield*, 842 F. Sup. 1117, 1127 (C.D. Ill. 1994) (employee's allegation of retaliation sufficient to defeat motion to dismiss claim for negligent infliction of emotional distress); *Mennen* v. *Easter Stores*, 951 F. Sup. 838, 864–66 (N.D. Iowa 1997) (awarding damages for emotional distress claim where employer violated Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2005 [c] [1]); *Hernandez* v. *McDonald's Corp.*, 975 F. Sup. 1418, 1428 (D. Kan. 1997) (granting summary judgment for employer because employee did not suffer physical injury and adequate remedy existed under state discrimination law); *Kelley* v. *Schlumberger Technology Corp.*, 849 F.2d 41, 44 (1st Cir. 1988) (under Louisiana law, employee could recover on claim for negligent infliction of emotional distress where emotional injuries were foreseeable and where mental suffering was more than minimal worry and inconvenience); *Photias* v. *Graham*, 14 F. Sup. 2d 126, 131 (D. Me. 1998) (denying defendant fellow employee's motion to dismiss claim

## the majority of states that recognize negligent infliction

for negligent infliction of emotional distress on grounds that he had no duty to plaintiff); *Caldwell* v. *Federal Express Corp.*, 908 F. Sup. 29, 34 (D. Me. 1995) (claim of negligent infliction of emotional distress cognizable to extent that it does not duplicate discrimination claim); *Maldonado* v. *National Acme Co.*, 73 F.3d 642, 644–48 (6th Cir. 1996) (under Michigan law, employee could recover on claim for negligent infliction of emotional distress where employee either met elements of bystander distress claim or feared for his own safety); *Kennedy* v. *GN Danavox*, 928 F. Sup. 866, 873–74 (D. Minn. 1996) (dismissing claim because plaintiff did not allege personal injury or presence in zone of danger and because conduct complained of was wilful, wanton or malicious); *Gordon* v. *Kansas City*, 241 F.3d 997, 1004–1005 (8th Cir. 2001) (under Missouri law, where employee's claim of negligent infliction of emotional distress was based on claim of unlawful termination, finding that there no unlawful termination was fatal because, as matter of law, defendants' conduct did not create unreasonable risk of distress); *Miller* v. *Wackenhut Services, Inc.*, 808 F. Sup. 697, 701 (W.D. Mo. 1992) (denying motion to dismiss employee's claim of negligent infliction of emotional distress arising from supervisor's harassing telephone calls); *Hutton* v. *General Motors Corp.*, 775 F. Sup. 1373, 1381–82 (D. Nev. 1991) (granting summary judgment for employer because employee was not bystander and did not suffer physical injury); *Morris* v. *Siemens Components, Inc.*, 928 F. Sup. 486, 499 (D.N.J. 1996) (granting summary judgment for employer because employee did not allege elements of claim for negligent infliction of emotional distress); *Wahlstrom* v. *Metro-North Commuter R. Co.*, 89 F. Sup. 2d 506, 531–32 (S.D.N.Y. 2000) (dismissing claim against supervisor because plaintiff did not allege special duty and because conduct was intentional, not negligent); *Pardasani* v. *Rack Room Shoes, Inc.*, 912 F. Sup. 187, 192 (M.D.N.C. 1996) (dismissing employee's claim of negligent infliction of emotional distress because employee did not allege severe disabling mental condition); *Osman* v. *Isotec, Inc.*, 960 F. Sup. 118, 122 (S.D. Ohio 1997) (dismissing claim under Ohio law because employee did not allege elements of bystander distress and stating in dicta that Ohio Supreme Court probably would not recognize negligent infliction of emotional distress in employment setting); *Regan* v. *Lower Merion*, 36 F. Sup. 2d 245, 251–52 (E.D. Pa. 1999) (dismissing claim arising from termination because Pennsylvania law only recognizes tort of negligent infliction of emotional distress arising from bystander distress, presence in zone of danger or arising from independent tort and mere termination did not constitute breach of duty); *Iacampo* v. *Hasbro, Inc.*, supra, 929 F. Sup. 582–83 (dismissing claim for negligent infliction of emotional distress under Rhode Island law because employee did not allege elements of bystander distress); *Big Owl* v. *United States*, 961 F. Sup. 1304, 1309 (D.S.D. 1997) (granting summary judgment for employer because employee's claim of negligent infliction of emotional distress arising out of nonrenewal of contract did not allege physical injury); *Scarborough* v. *Brown Group, Inc.*, 935 F. Sup. 954, 963 (W.D. Tenn. 1995) (dismissing

of emotional distress claims as a general matter apply the same standard to such claims arising in the employment context. We note, however, that, in a majority of these jurisdictions, the standard for claims of negligent infliction of emotional distress is much narrower than the *Montinieri* standard, requiring the plaintiff to prove some objective element such as physical injury, property damage, presence in the zone of danger or the existence of an independent tort. As is apparent from the large number of cases in which the employee's claim was dismissed for failure to meet the relevant standard, these limitations provide an automatic safeguard against spurious claims in the employment context that *Montinieri* does not provide. Accordingly, those cases do not affect our conclusion that, for the previously stated policy reasons, the societal costs of allowing claims for negligent infliction of emotional distress in the context of ongoing employment are unacceptably high.

We conclude, therefore, that an individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as

employees' claim of negligent infliction of emotional distress because employees did not allege presence in zone of danger); *Chea* v. *Men's Warehouse, Inc.*, 85 Wash. App. 405, 412–13, 932 P.2d 1261, as amended by 971 P.2d 520 (Wash. App. 1997) (claim for negligent infliction of emotional distress is cognizable in employment context where not barred by workers' compensation provisions, but noting that claims arising from routine disciplinary action in response to personality dispute or duplicating discrimination claims are not cognizable); *Duart* v. *FMC Wyoming Corp.*, 859 F. Sup. 1447, 1464 (D. Wyo. 1994) (granting summary judgment for employer because employee's claim of negligent infliction of emotional distress arising out of termination did not allege observation of infliction of serious bodily harm or death); see also *Yballa* v. *Sea-Land Services, Inc.*, 919 F. Sup. 1428, 1434–36 (D. Haw. 1995) (dismissing claim for negligent infliction of emotional distress under Jones Act, 46 U.S.C. § 688, and Federal Employers' Liability Act, 45 U.S.C. § 51, because employee did not allege physical injury, presence in zone of danger or bystander distress).

distinguished from conduct occurring in the termination of employment. Accordingly, we answer the second certified question in the negative.

Both certified questions are answered: "No."

No costs will be taxed in this court to any party to this action.

In this opinion KATZ and PALMER, Js., concurred.

SULLIVAN, C. J., concurring in part and dissenting in part. I concur with parts I and II A of the majority opinion. I respectfully disagree, however, with the majority's conclusion in part II B that individual employees may not be held liable for negligent infliction of emotional distress claims arising in the context of ongoing employment.

The majority, citing " 'fears of flooding the courts with "spurious and fraudulent claims"; problems of proof of the damage suffered; exposing [potential defendants] to an endless number of claims; and economic burdens on industry' "; *Clohessy* v. *Bachelor*, 237 Conn. 31, 50, 675 A.2d 852 (1996); concludes that the cause of action recognized by this court in *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978), is not cognizable in the context of ongoing employment. I would conclude that, for all of these policy reasons, this court's decision in *Montinieri*, in which we upheld a jury instruction by the trial court that expanded the preexisting standard for negligent infliction of emotional distress claims to include claims in which the plaintiff has not alleged a resulting bodily injury or illness or a risk of harm from physical impact; id., 345; was misguided. The policy concerns cited by the majority arise in many contexts other than the context of ongoing employment. It is clear to me, for example, that the daily activities of doctors, police officers and teachers are no less chilled

by the fear of spurious lawsuits based on *Montinieri* than the activities of employees in the workplace.

Recognizing, however, that the majority is not disposed to reconsider *Montinieri* in this case, as I am, I believe that the distinction drawn by the majority between negligent infliction of emotional distress claims involving a termination of employment and claims arising in an ongoing employment context is arbitrary. The majority concludes that the interest of workers in being protected from negligent infliction of emotional distress is outweighed by other public policy considerations. In my view, however, the same public policy considerations that arise in an ongoing employment context arise in the context of an employment termination. An employer who wishes to terminate an inept employee is faced with the same risk of a spurious lawsuit as an employer who wishes to reprimand an inept employee. Accordingly, I cannot perceive any principle on which to make the distinction made by the majority.

Indeed, I do not believe that this issue ever would have arisen in the District Court if not for the mere fortuity that a number of other courts simply have misinterpreted our statement in *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997), that "negligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process' " to mean that a termination is a condition precedent to a claim of negligent infliction of emotional distress in the workplace. As I already have indicated, I can perceive no reason to adopt that misreading in this case. Although the decision of the majority may reduce the number of claims brought under *Montinieri*, I do not believe that it will reduce the percentage of spurious claims.

I further note that Connecticut apparently is now the only jurisdiction to draw a distinction between negligent infliction of emotional distress claims arising in the context of ongoing employment and claims involving termination of employment. I recognize, as the majority points out, that most of our sister states have a more restricted cause of action for negligent infliction of emotional distress than the standard we adopted in *Montinieri*. I do not believe, however, that this court should adopt an expansive cause of action and then attempt to mitigate the resulting public policy concerns by imposing arbitrary, piecemeal restrictions on its cognizability. See *Mendillo* v. *Board of Education*, 246 Conn. 456, 485, 717 A.2d 1177 (1998) (declining to recognize cause of action for loss of parental consortium on ground that "we would have to impose arbitrary limitations on the scope of the cause of action in order to avoid the creation of a practically unlimited class of potential plaintiffs"). "Courts operating in the quintessential common-law context . . . function best, and command the most respect, when their decisions can be defended on grounds of reason and principle. Although courts are, like legislatures, often in the business of drawing lines, how we are expected to draw lines differs significantly from how the legislature is expected to draw lines. Whereas legislatures often draw arbitrary lines, we are expected to draw lines based on reason and principle, and to rely on arbitrary limits only when the policy reasons are sufficiently persuasive to justify performing such an extraordinary task." Id., 486–87.

I would conclude that the cause of action recognized by this court in *Montinieri* is cognizable both in the context of ongoing employment and in cases involving termination of employment. Accordingly, I respectfully dissent.

NORCOTT, J., concurring and dissenting. I concur with parts I and II A of the majority opinion. I also join,

in part, the Chief Justice's dissent with respect to part II B of the majority opinion. I agree with the dissent that the majority's distinction between claims involving termination and claims in an ongoing employment context is arbitrary. In my opinion, employers have a legal duty to avoid subjecting their employees to the negligent infliction of emotional distress whether the claim arises in the ongoing employment context or through a termination event. I write separately, however, because I am not prepared, at this point, to conclude that our decision in *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978), was, as the Chief Justice writes, "misguided." As the majority opinion notes, we do not address *Montinieri* because neither party asked for our opinion on the issue in that case. While I would be willing, in a proper case, to revisit the question of whether a claim for negligent infliction of emotional distress requires proof of an ensuing physical injury or risk of harm from physical impact, I believe it is premature to offer my opinion on that issue without the full exploration of it in another case. Our decision in *Montinieri* may or may not have been "misguided." Whichever comes to be the case, I reserve my opinion on that issue for a future appeal before this court.