[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #119
The plaintiff, Michael Cirrito, filed an eleven count amended complaint on June 12, 2002, against the defendants, Crawford Company (Crawford) and Insura Property Casualty (Insura). In count one, which asserts a breach of contract claim against Crawford, the plaintiff alleges the following facts, all of which are incorporated or repeated in counts two through eleven. On or about January 14, 1999, the plaintiff sustained a back injury during the course of his employment with Resource Group Limited of Connecticut (Resource Group). At the time of the plaintiffs injury, Resource Group insured its worker's compensation liability through an insurance policy issued by Insura and administered by Crawford. In the course of administering the plaintiffs workers' compensation claims under the policy, Crawford, the agent and third party administrator for Insura, was adjudicated, after a formal hearing before the workers' compensation commissioner, as having engaged in a pattern of inappropriate claims administration.[1] The plaintiff, a third party beneficiary to the contact between Resource Group and Insura, suffered damages and monetary loss as a result of Crawford's breach of contact.
Count two alleges breach of contract against Insura. Count three alleges breach of the implied covenant of good faith and fair dealing against Crawford and Insura. Counts four and five allege claims of unfair settlement practices as defined in General Statutes § 38a-816 (6) against Insura and Crawford, respectively. Count six alleges a claim of an unfair trade practice in violation of General States § 42-110b
against Insura. Counts seven and eight allege negligence claims against Crawford and Insura, respectively. Counts nine and ten allege claims of negligent infliction of emotional distress against Insura and Crawford, respectively. Count eleven alleges a claim of intentional infliction of emotional distress against Crawford.
On July 3, 2002, Crawford filed a motion to strike counts one, three, five, seven, ten and eleven of the plaintiffs amended complaint on the CT Page 16435 ground that "[t]he Workers' Compensation Act provides the exclusive remedy for all of the plaintiffs claims." Crawford offers additional grounds for striking each of these counts. It moves to strike counts one, three, five seven and ten on the ground that those counts fail to allege that Crawford acted with the requisite intent to cause the plaintiffs alleged harm. It moves to strike counts one and three on the grounds that those counts fail to state claims for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, because "neither the plaintiff nor the defendant are parties to the alleged contract"; count five on the ground that General Statutes § 38a-816 (6) does not authorize a private right of action in favor of the plaintiff; and count eleven on the ground that the plaintiffs claim for intentional infliction of emotional distress is legally insufficient.
As required by practice Book § 10-42, Crawford's motion to strike was accompanied by a memorandum of law in support of the motion, and on August 9, 2002, the plaintiff filed a memorandum of law in opposition to Crawford's motion.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260,765 A.2d 505 (2001). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997).
Crawford moves to strike the plaintiffs amended complaint on the ground that Worker's Compensation Act is the exclusive remedy for the plaintiffs alleged injuries. In its memorandum in support of its motion to strike, Crawford submits that the Connecticut Appellate Court, in Coollick v.Windham, 7 Conn. App. 142, 508 A.2d 46 (1986), held that the workers' CT Page 16436 compensation commission retains exclusive jurisdiction over an employees's action against his employer for bad faith failure to pay workers compensation benefits. Therefore, Crawford argues, based on the court's decision in Coollick v. Windham, each count of the plaintiffs amended complaint must be stricken because the Workers' Compensation Act is the exclusive remedy for the plaintiffs claims.
The plaintiff, in its memorandum in opposition to Crawford's motion to strike, argues that the Workers' Compensation Act does not provide the exclusive remedy for bad faith claims against workers' compensation insurers. Moreover, the plaintiff argues, Coollick v. Windham involved a self insured municipality; thus the employer, not an insurance company, was the party protected by the exclusivity of the Workers Compensation Act. As a result, the plaintiff argues, his claims should not be stricken as they are not precluded by the exclusivity of the Workers' Compensation Act.
Crawford's reliance on Coollick v. Windham is misplaced. Crawford notes that the Appellate Court stated that the workers' compensation commission has "exclusive jurisdiction to hear compensation claims." (Emphasis added.) Coollick v. Windham, 7 Conn. App. 142, 148, 508 A.2d 46 (1986). The Appellate Court further articulated that "[i]t is well settled that workers' compensation is the exclusive remedy for an employee seeking redress for work related injuries." (Emphasis added.) Id. The plaintiff, in the present case, is not circumventing the workers' compensation commission in an attempt to have the Superior Court adjudicate his compensation claim. His compensation claim has already been decided. The plaintiff instead is seeking redress for Crawford's alleged common law and statutorily defined tortuous conduct in administering his workers' compensation benefits.
The Appellate Court's holding in Coollick v. Windham, like that of the trial court, was that the plaintiffs failure "to present properly a claim cognizable under the Civil Rights Act because his complaint fail[ed] to set out any deprivation of a right secured by the constitution or laws of the United States. . . ." Id., 145. Moreover, the plaintiff in Coollickv. Windham conceded that the workers compensation commissioner had exclusive jurisdiction over his claim, Furthermore, the plaintiff inCoollick v. Windham conceded that the workers' compensation commission had exclusive jurisdiction over a claim for failure to pay benefits unlike the plaintiff in the present case who has not conceded that the workers' compensation commission has exclusive jurisdiction over a claim for failure to pay benefits and, instead, brings common law and Connecticut statutory claims against Crawford. Finally, the plaintiffs claim in Coollick v. Windham is distinguishable from the plaintiffs claim CT Page 16437 in the present case with regard to Crawford itself. In Coollick v.Windham, the plaintiff sought damages from his self insured employer. In this case, the plaintiff is seeking damages from an insurance company and its agent; two parties who, unlike an employer, do not fall within the exclusivity realm that the Workers' Compensation Act created. See Sansonev. Esis, Inc., Superior Court, judicial district of New Haven, Docket No. CV 92 0327409 (January 4, 1993, Maiocco, J.).
"There is currently a split of authority [in the Superior Court] as to whether a beneficiary of a workers' compensation award can sue an insurance carrier for bad faith handling of the worker's claims. One line of reasoning holds that the exclusivity principle of workers compensation does not apply because the alleged intentional bad faith handling of a workers' compensation claim by an insurance company does not arise during the course of employment, but rather occurs after the injury for which the worker is being compensated. . . . This line of cases also generally holds that since the remedies provided for by workers' compensation do not provide redress for consequential damages suffered as a result of an insurer's bad faith handling of a workers' compensation award, further administrative remedies would be inadequate and exhaustion futile." (Internal quotation marks omitted.) Silano v. Hartford Underwriters Ins.Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 96 0329388 (September 18, 2000, Rush, J.).
"The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The Workers' Compensation Act compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; emphasis added; internal quotation marks omitted.) Dowling v. Slotnik,244 Conn. 781, 799, 712 A.2d 396 (1998). "[T]he exclusivity provisions of the Workers' Compensation Act operate as a total bar to actions brought by employees against their employers for job related injuries." (Emphasis added.) Sgueglia v. Milne Construction Co., 212 Conn. 427, 433,562 A.2d 505 (1989).
The Workers' Compensation Act is fraught with unambiguous language that supports the conclusion that it is not the plaintiffs exclusive remedy for his alleged injuries. For instance, the Connecticut Supreme Court cited General Statutes § 31-284 (a) when it found that "[u]nder the act's exclusivity provision, `[a]n employer who complies with the requirements of subsection (b) of [General Statutes § 31-284] shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his CT Page 16438 employment. . . . All rights and claims between an employer who complies with the requirements of sub-section (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter. . . .' General Statutes § 31-284 (a)." (Emphasis added.) Doe v. YaleUniversity, 252 Conn. 641, 668, 748 A.2d 834 (2000). Along those lines, the court in Delpier v. Connecticut Interlocal Risk Management Assn., Superior Court, judicial district of Waterbury, Docket No. CV 01 0164366 (November 28, 2001, Pittman, J.) also cited General Statutes § 31-284
(a) when it found that "[t]he only cause of action that is "abolished' under the workers compensation statutes is the direct cause of action by an employee against an employer for personal injury arising out of and in the course of employment." Finally, the court in Sansone v. Esis, Inc., Superior Court, judicial district of New Haven, Docket No. CV 92 0327409 (January 4, 1993, Maiocco, J.) cited General Statutes §§ § 31-284
(a), 31-284b (a), and 31-293 (a) when it found that, with regard to the Workers' Compensation Act, "it is obvious that the legislature did not intend to encompass the term insurers' within the meaning of `employer.'"
Undoubtedly, the failure to pay insurance benefits in this case is tenuously associated with the employee's original employment injury. Here, however, there are two distinct sets of alleged injuries involved. One injury, already adjudicated by the workers' compensation commission, occurred within the confines of the employee/employer relationship. The other alleged injuries, articulated in the plaintiffs complaint, occurred within the confines of a different relationship, that of beneficiary and insurance company. The latter, moreover, allegedly occurred "after the [employment] injury for which the [plaintiff] is being compensated."Sialno v. Hartford Underwriters Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 96 0329388 (September 18, 2000, Rush, J.). It is difficult to envisage how, either temporally or physically, a claim against an insurance company for failing to pay benefits is an injury that arises out of and in the course of an employee's employment. "As alleged in the present case, the [injuries] suffered by the plaintiff [do] not arise from the course of employment, but [are] additional [injuries] occurring as a result of independent actions of the insurer that are separate from the original claim." Moranv. Travelers Property Casualty, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0350319 (October 23, 1998, Stodolink, J.).
The reason for enacting the Workers' Compensation Act was to provide a no fault "quid pro quo between employees and employers. See Doe v. YaleCT Page 16439University, 252 Conn. 641, 672, 748 A.2d 834 (2000); Dowling v. Slotnik,244 Conn. 781, 799, 712 A.2d 396 (1998); Perodeau v. Hartford,259 Conn. 729, 747, 792 A.2d 752 (2002). Employees give up the opportunity to sue their employer in common law tort; in exchange, employees receive relatively swift and predictable benefits designed to compensate them for injuries incurred while in the course of their employment. See Id. Employers, in turn, give up the opportunity to contest injuries that may not be their fault; in exchange, employers receive a likewise predictable, and cost effective means by which to protect themselves from the conceivably constant barrage of large tort claims. See Id. Notably, in this equation, the insurance company is absent. If Crawford is allowed to take advantage of the exclusivity of the Workers' Compensation Act, it will be reaping the benefits of a statutorily created compromise, between employers and employees, that it is not a party to. Within the worker's compensation scheme, "a right of action should only be deemed taken away from an employee where something of value has been put in its place." Perodeau v. Hartford, 259 Conn. 729,747, 792 A.2d 752 (2002). As a result, by granting Crawford's motion to strike on the ground that the Worker's Compensation Act is the plaintiffs exclusive remedy under the circumstances, Crawford would be taking advantage of the Workers' Compensation Act's "quid pro quo' without giving any "this" for the "that" they are receiving.
This court adopts the position followed by the majority of Superior Court judges,[2] and denies Crawford's motion to strike the plaintiffs complaint[3] on the ground that the Worker's Compensation Act is the exclusive remedy for the plaintiffs claims.[4]
Crawford moves to strike counts one and three, of the plaintiffs complaint on the alternative ground that the plaintiff has not alleged a contractual relationship between himself and Crawford. As a result, Crawford argues that the plaintiffs breach of contract and breach of implied covenant of good faith and fair dealing claims are legally insufficient.
The plaintiff argues, in his memorandum in opposition to Crawford's motion to strike, that the employer and employees are the two distinct beneficiaries of a contract between employers and workers' compensation insurance providers. Furthermore, the plaintiff argues, "[i]t is illogical and contrary to common sense to assume that employees of an employer insured for worker's compensation purposes under a contract of insurance are not third party beneficiaries of that contract."
"[O]ne who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." CT Page 16440 (Internal quotation marks omitted.) Tomlinson v. Board of Education,226 Conn. 704, 718, 629 A.2d 333 (1993). "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. . . . Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach." (Citation omitted) Gateway Co. v. DiNoia, 232 Conn. 223, 230-31,654 A.2d 342 (1995).
"[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford, supra, 255 Conn. 261.
Counts one and three of the plaintiffs complaint allege that the plaintiff was an employee of Resource Group. The plaintiff also claims that Resource Group provided workers' compensation coverage to its employees through a contract of insurance with Insura and that Crawford administered the contract as Insura's agent. The plaintiff alleges that the purpose of the insurance contract was to handle workers' compensation claims brought by Resource Group employees. Moreover, the plaintiff alleges that he and other Resource Group employees were intended third party beneficiaries of the insurance contract. Finally, the plaintiff necessarily implies that he filed a workers' compensation claim with Resource Group and that pursuant to the insurance contract, Insura accepted the plaintiffs claim and agreed to provide him with benefits.
Construing the facts in the complaint most favorably to the plaintiff, the plaintiff has adequately alleged third party beneficiary status under the insurance contract between his employer and Insura.[5] Therefore, the breach of contract and breach of implied covenant of good faith and fair dealing claims of the complaint are legally sufficient, and Crawford's motion to strike counts one and three of the plaintiffs complaint are denied.
Next, Crawford moves to strike count five of the plaintiffs amended complaint on the ground that there is no private right of action under CT Page 16441 the provisions of General Statutes § 38a-816 (6), Connecticut Unfair Insurance Practices Act (CUIPA).
"In order to allege properly a CUIPA violation, the plaintiff must allege, inter alia, that the defendant engaged in the allegedly wrongful conduct with such frequency as to indicate a general business practice." (Internal quotations omitted.) Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 669, 613 A.2d 838 (1992); Lees v. Middlesex Ins. Co.,229 Conn. 842, 849, 643 A.2d 1282 (1994); Mead v. Burns, 199 Conn. 651,666, 509 A.2d 11 (1986). Additionally, "the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." Lees v. Middlesex Ins. Co., supra, 229 Conn. 849.
In the present case, the plaintiff alleges that Crawford delayed weekly workers' compensation benefit checks, improperly converted workers' compensation benefits, improperly reduced benefits, and failed to properly adjust the plaintiffs claim and pay his benefits. The plaintiff also alleges that "[t]he [d]efendant . . . has made it its general business practice to neglect, fail and/or refuse to pay for covered losses . . . under workers' compensation insurance policies thereby forcing said beneficiaries [the plaintiff and his fellow employees] to litigate through either the workers' compensation commission or the Superior Court to recover benefits that they are entitled to. . . ." This court has previously permitted plaintiffs to allege CUIPA violations as a private cause of action and has held similar allegations sufficient to survive a motion to strike. See Seeds v. AIG Life Ins. Co., Superior Court, judicial district of New Haven, Docket No. 00 0375958 (December 6, 1996, Zoarski, J.). As a result, because the plaintiff alleges that the wrongful conduct was performed by Crawford with such frequency as to indicate a general business practice, Crawford's motion to strike count five of the plaintiffs complaint is denied.
Crawford also moves to strike count eleven of the plaintiffs amended complaint arguing that the plaintiff fails to allege facts sufficient to support his claim of intentional infliction of emotional distress. "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where CT Page 16442 reasonable minds disagree does it become an issue for the jury. . . .
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210-11,757 A.2d 1059 (2000).
In count eleven of his complaint, the plaintiff alleges that he was an employee of Resource Group, that he injured his back in the course of his employment and that Resource Group insured its workers' compensation liability through a policy with Insura. The plaintiff also alleges that Crawford administered the insurance policy between Resource Group and Insura, the purpose of the policy was to administer workers' compensation benefits for Resource Group employees, and that Insura assumed an obligation to pay workers' compensation benefits to employees with valid claims. Finally, the plaintiff alleges that he and his fellow employees were intended third party beneficiaries of the insurance contract between Resources Group and Insura. The plaintiff then conclusorily alleges that Crawford "knew or should have known that emotional distress was a likely result of its conduct" and that "[t]his conduct . . . was extreme and outrageous."
Although a court must construe the facts in the complaint most favorably to the plaintiff, it is virtually impossible to deduce what extreme and outrageous conduct by Crawford caused the emotional distress allegedly experienced by the plaintiff. The actions described in count eleven cannot be construed as being utterly intolerable in a civilized community. Therefore count nine of the plaintiffs amended complaint is stricken because it fails to allege facts sufficient to support a claim of intentional inflictions of emotional distress.
For the foregoing reasons, Crawford's motion to strike counts one, three, five, seven, and ten are denied. Crawford's motion to strike count eleven is granted. CT Page 16443
 ___________________ Howard F. Zoarski Judge Trial Referee